**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.* )<br><br>Plaintiffs, )<br><br>v. )<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES, DEPARTMENT OF HOMELAND SECURITY, *et al.* )<br><br>Defendants. ) | CV-18-08034 GW |

<u>**DECLARATION OF JILL A. EGGLESTON**</u>

I, JILL A. EGGLESTON, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury:

1.    I am the Assistant Center Director in the Freedom of Information and Privacy Act ("FOIA/PA") Unit, National Records Center ("NRC"), United States Citizenship and Immigration Services ("USCIS"), within the United States Department of Homeland Security ("DHS"), in Lees Summit, Missouri. I have held the position of Associate Center Director since February 4, 2008.  I am also an attorney, licensed to practice law by the State of Kansas in 1983. Prior to joining DHS, I served for 19 ½ years as Associate General Counsel for the Defense Finance and Accounting Service ("DFAS") of the U.S. Department of Defense ("DoD"). As part of my duties with the DFAS, among other things, I provided legal advice to the agency on the release of information sought under the FOIA and PA.

2.  As Chief FOIA Officer for USCIS, I supervise over 200 information access professionals who are responsible for the orderly processing of all public, congressional, judicial, and inter-/intra-agency requests or demands for access to USCIS records and information pursuant to the FOIA, Privacy Act, Executive Orders, departmental directives, regulations and compulsory legal process.

3.  Through the exercise of my official duties as Associate Center Director, I am personally familiar with USCIS's standard process for responding to FOIA requests, including search procedures for locating agency records. More specifically, I am personally familiar with USCIS's procedures and actions taken in response to the FOIA request at issue. I was responsible for overseeing and coordinating the searches conducted by USCIS in response to this request, and I am personally familiar with the searches conducted by USCIS in response to this request.

4.  This declaration is submitted in support of USCIS's Motion for Summary Judgment in this matter, and in accordance with the Court's Order (Dkt. 54, 56). This declaration describes, generally, agency procedures for processing FOIA requests for access to agency records and, more specifically, agency action taken in response to the Plaintiff's FOIA request. In addition, my declaration makes reference to and incorporates a *Vaughn* index that describes the records USCIS produced to Plaintiffs in response to their FOIA request and that were withheld in part and the bases, pursuant to FOIA, that justify their exemption from disclosure. *See infra*, ¶ 31. The statements contained in this declaration are based on my personal knowledge, my review of relevant documents kept by USCIS in the course of ordinary business, and upon information provided to me by other USCIS employees in the course of my official duties.

## USCIS'S STANDARD FOIA OPERATING PROCEDURES

5.  USCIS routinely and consistently processes FOIA requests in compliance with DHS implementing regulations found at 6 C.F.R. Part 5 and Management Directive

No. 0460.1. Specifically, when the agency receives a FOIA request for USCIS information or documents, USCIS's standard procedures include the following: [1]

a) after determining the nature, scope, and contours of a valid FOIA request, a preliminary search is conducted to locate potentially responsive records;

b) because FOIA requests are generally processed by the NRC on a first- in/first-out basis, the request is logged in the approximate order of its receipt into a computerized case tracking and retrieval system which automatically assigns a control number and tracks the file created;

c) an acknowledgement letter is contemporaneously mailed to the requester, advising of the control number, processing fee arrangement, processing options, and contact information, and addressing any collateral requests made by requester;

d) during any abeyance in processing, periodic system inquiries are conducted to maintain updated information concerning the disposition of agency records that are subject to the pending FOIA request;[1]

e) if relevant records are in the possession of an office or agency other than the responding office, a request for the production of the records is sent to the

---

[1] DHS requirements for submitting a FOIA request include the following:

1. All FOIA requests must be submitted in writing and signed by the requester. 6 C.F.R. § 5.3(a).

2. If the requester seeks records about him/herself the requester must verify identity by submitting, in writing, a statement containing his/her full name, current address, date of birth and place of birth. This statement must be signed, and the signature must either be notarized or submitted under 28 U.S.C. § 1746 (penalty of perjury in lieu of notarized signature). This signature must be submitted along with the FOIA request. 6 C.F.R. §§ 5.3(a), 5.21(d).

3. The FOIA request must describe the records that are being sought in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort. 6 C.F.R. § 5.3(b).

records' custodian(s) for that office or agency;

f) during the course of processing, the FOIA request and any responsive records are subjected to rigorous analyses to arrive at the proper final agency determination; and finally;

g) the NRC sends its response to the requester, granting or denying, in whole or in part, access to requested records, and advising of any additional rights that may have vested in the requester by virtue of the final agency determination.

6. Due to the significant number of FOIA requests received by USCIS and in an effort to process FOIA requests in a manner designed to be fair and expeditious, USCIS has adopted a policy of processing FOIA requests on a first-in/first-out basis. This process is further enhanced by the implementation of a regulation providing for expedited processing of requests under given circumstances, and the adoption of a multi-track system of processing which not only allows the agency to process requests on a first-in/first-out basis within each track, but also permits USCIS to respond to relatively simple requests more quickly than requests involving complex and/or voluminous records. *See* 6 C.F.R. § 5.5(b). USCIS's first-in/first-out and multi-track processing is consistent with the requirements set forth in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976) and *Exner v. FBI*, 612 F.2d 1202 (9th Cir. 1980).

## PLAINTIFFS' COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al*. FOIA REQUEST

7. By letter received on September 12, 2018,[2] the Center for Human Rights and Constitutional Law submitted a FOIA request on behalf of the Coalition for Humane Immigrant Rights of Los Angeles, the National Partnership for New Americans, UnidosUS, CASA, Mi Familia Vota, Michigan United, El Rescate, New York Immigration Coalition, and One America ("Plaintiffs") to USCIS. Plaintiffs' FOIA request was a complex request that sought access to 20 different categories

---

[2] Plaintiffs' FOIA request was mailed to the NRC in a letter dated August 6, 2018. It was not received by the NRC FOIA division and scanned into the NRC FOIA processing system and database until September 12, 2018.

of records that pertained to USCIS processing of N-400 (naturalization) applications "relating to the time period January 1, 2016 to the present," as follows:

1. All documents that report to USCIS Headquarters and those generated by USCIS Headquarters on numbers of approvals and denials of N-400 naturalization applications including but not limited to data compilations that in any way provide the reasons for denials of N-400 naturalization applications.

2. All documents compiling data submitted by one or more of the agency's locations processing or adjudicating N-400 naturalization applications or produced by USCIS Headquarters related to the volume of or reasons for RFEs ("Requests For Evidence") and NOID ("Notices of Intent to Deny") notifications issued in N-400 cases.

3. All documents compiling data submitted by one or more of the agency's locations processing or adjudicating N-400 naturalization applications or produced by USCIS Headquarters related to the delay in processing N-400 applications.

4. All documents relating to funds allocated by Congress for the processing and/or adjudication of N-400 applications. (USCIS will have no such record, as Congress does not appropriate funds for processing or adjudication of N-400 applications).

5. All documents compiling data that show the fees received with naturalization applications, excluding documents relating to individual cases such as receipts, deposits, etc.

6. All documents regarding USCIS's allocation of funds to its various facilities and field offices for the processing or adjudication of N-400 applications.

7. All documents relating in whole or in part to decisions by USCIS officials regarding allocations of funds to the processing centers and field offices for the adjudication of N-400 'applications.

8. All documents that address or concern delays or backlogs in the processing time for naturalization applications.

9. To the extent not provided in response to Request Number 8, all data compilations and spreadsheets addressing in whole or in part delays or backlogs in the processing or adjudication of naturalization applications.

10. To the extent not provided in response to a separate request, all documents reporting on: (a) the volume of naturalization applications received; (b) where the applications were received; (c) where the applications were processed and adjudicated; and (d) how long it took to fully process and adjudicate the naturalization applications.

11. All documents relating to inquiries from or responses to members of Congress relating to the delays in processing N-400 applications.

12. All documents including but not limited to memoranda, guidance, instructions, or directives issued to facilities, centers, or field offices discussing policy or procedures to be followed in the processing or adjudication of N-400 applications.

13. All documents and data compilations sent to or prepared by the Administrative Appeals Office addressing the number of pending and decided appeals of denials of N-400 applications and the outcome of those appeals. This request does not seek copies of the individual appeals or decisions.

14. All documents sent to or prepared by USCIS regarding delays in naturalization applications due to problems implementing or using the Electronic Immigration System ("ELIS").

15. All documents and data relied upon in The Department of Homeland Security Ombudsman 2017 Annual Report To Congress regarding the USCIS (at https://www.dhs.gov/sites/default/files/publications/DHS%20Annual%20Report%20 2017_0.pdf

16. All documents and data relied upon in The Department of Homeland Security Office of Inspector General Report "USCIS Has Been Unsuccessful in Automating Naturalization Benefits delivery," dated November 30, 2017 (at https://www.oig.dhs.gov/reports/2018/uscis-has-been-unsuccessful-automating-naturalization-benefits-delivery/oig-18-23 ).

17. All complaints filed by naturalization applicants or those acting on behalf of naturalization applicants regarding inappropriate, abusive, or discriminatory treatment of naturalization applicants by USCIS employees.

18. All documents related to a review, update, or revision of the USCIS Fee Study described here: https://www.federalregister.gov/documents/2016/05/04/2016-10297/us-citizenship-and-immigration-services-fee-schedule

19. All documents relied upon, issued in response to, or to implement the change in the mission of USCIS announced on February 22, 2018 described here: https://www.uscis.gov/news/news-releases/uscis-director-l-francis-cissna-new-agency-mission-statement

20. All documents received by USCIS from the White House or forwarded by USCIS to the White House regarding in whole or in part the processing or adjudication of naturalization applications.

*See* Plaintiffs' FOIA Request, attached hereto as Attachment A.

8. Due to the complex nature of Plaintiffs' FOIA request and the need to search across the agency for responsive records, as there was no one central file that contained all potentially responsive records, USCIS assigned Plaintiffs' request to its complex FOIA processing track – Track II. USCIS also assigned case number COW2018001096 to Plaintiffs' FOIA request.

9.   On September 19, 2018, USCIS replied to Plaintiffs with a letter acknowledging receipt of their FOIA request, informing Plaintiffs of its assignment to USCIS's complex FOIA processing track (Track II). USCIS also invoked its right to additional processing time pursuant to 5 U.S.C. § 552(a)(6)(B). Further, the letter invited Plaintiffs to narrow their FOIA request in order to be eligible for placement in a faster FOIA processing track. *See* USCIS FOIA Acknowledgment Letter, attached hereto as Attachment B.[3]

### A.   Initial Search for Responsive Records by USCIS

10.   Upon review of Plaintiffs' FOIA request, USCIS FOIA staff at the NRC, who have experience handling FOIA requests that seek naturalization records, and that have a general familiarity with USCIS agency program offices and operations, determined that they needed to request the assistance of numerous USCIS program offices in order to conduct a FOIA records search that was reasonably calculated to locate responsive records.  NRC FOIA staff based in Lee's Summit, Missouri, do not have direct access to all USCIS agency computer databases or records systems. Accordingly, and as was done in this case, NRC staff will "staff" a FOIA request to agency program offices, requesting that they conduct a search of their records systems and databases for responsive records and forward those records to the NRC for review, processing, and a response to the requester.

11.   Based on their review of Plaintiffs' request for 20 categories of USCIS naturalization records, NRC FOIA staff determined that certain USCIS program offices would be the most likely to have responsive records. The NRC determined that no USCIS office would likely have records responsive to all twenty items of the request. Instead, NRC staff determined that in order to expedite and focus the records search, that specific items of the request would be staffed to each program office. NRC FOIA staff provided each identified agency program office a copy of Plaintiff's FOIA request and specified which of the 20 request items each USCIS program office was to search for.

---

[3] On the date that USCIS sent its acknowledgement letter to Plaintiffs it was unaware that on September 17, 2018, Plaintiffs filed a FOIA lawsuit against USCIS related to their FOIA request. *See* Complaint, case no. 2:18-cv-08034 (Dkt. 1).

12. Accordingly, on or about October 10, 2018, and in order to conduct a FOIA search reasonably calculated to locate responsive records, NRC staff contacted the USCIS program offices of the Executive Secretariat ("EXSO") (which consists of senior USCIS managerial offices, including the Office of the USCIS Director and Deputy Director); Field Office Directorate ("FOD") (which manages USCIS field and district immigration adjudication offices, including those that process N-400 applications, located across the United States); Office of Chief Financial Officer ("OCFO") (which manages the USCIS budget and fiscal operations); Office of Policy and Strategy ("OP&S") (which establishes USCIS policy guidance, directives, and implements agency compliance with statutory and regulatory requirements that affect agency operations); Office of Legislative Affairs ("OLA") (which serves as a liaison between Congress and USCIS); Administrative Appeals Office ("AAO") (which adjudicates administrative appeals of certain USCIS immigration adjudications); and the Office of Information Technology ("OIT) (which manages USCIS technology operations).

13. In addition, NRC staff provided specific written instructions to each of the agency program offices in order to conduct the FOIA search. They provided the program offices a list of records search requirements that included the FOIA search time frame and cut-off date (January 1, 2016 – October 10, 2018). NRC staff directed that each program office would be responsible for conducting a records search responsive to specific items of the request. The written search instructions included detailed search terms to be utilized for each item of the request, the types of documents to search for, databases to search, *e.g.* the Electronic Immigration System ("ELIS")(a computerized USCIS immigration application filing system, including N-400 naturalization applications, available for use by the public), agency email, electronic records consisting of PowerPoint training slides, Excel spreadsheets, and hardcopy documents maintained by the program offices. For the sake of brevity in my declaration, I incorporate here and refer the Court to the NRC's Search Requirements document for further details on the NRC's initial records search in this case.   *See* COW2018001096 Search Requirements document, attached hereto as Attachment C.

14.   The USCIS program offices began searching for and compiling potentially responsive records pursuant to the search instructions that the NRC provided, and forwarded the records to the NRC for review and processing, pursuant to FOIA. NRC FOIA staff determined whether the records were responsive to Plaintiffs' request and prepared responsive records for production to Plaintiffs. The program offices compiled over 133 GB of potentially responsive records that were forwarded to the NRC for review. This volume of records proved to be very burdensome and time consuming for NRC staff to review. The size of the records tranche that the program offices compiled nearly crashed the NRC's de-duplication and records search software, known as Veritas. It took multiple attempts over numerous days to upload the records to the Veritas system in order to try to remove duplicate and out-of-scope records and conduct computer-aided searches through the records tranche. In addition,  the NRC received feedback from the USCIS program offices that Plaintiffs' FOIA  request was overly broad and burdensome, which hindered their staffs' ability to conduct a search reasonably calculated to locate responsive records. As a result, the NRC believed it was necessary to meet and confer with Plaintiffs in an attempt to further narrow the scope of their request and search parameters and conduct another records search

B.   Attempts to Negotiate Scope of Search and
First Records Production

15.   To assist in identifying the records at issue in this case, and to expedite the search for and processing of those records, the parties met and conferred on February 21, 2019. During the meeting, USCIS counsel explained that some of the items listed in Plaintiffs' FOIA request are overbroad and should be narrowed. Plaintiffs requested that USCIS identify the issues with the FOIA request in writing following the meeting. Accordingly, on March 12, 2019, Defendant outlined the various issues regarding Plaintiffs' FOIA request in an email to Plaintiffs. Plaintiffs' counsel acknowledged receipt of the email the same day but did not respond further. *See* Supplemental Rule 26(f) Report, (Dkt. 18); Joint Report Supplemental Exhibit B, (Dkt. 18-2). On March 25, 2019, the Court directed that the parties were "to file a joint status report re scope and timing agreements by June 19, 2019." *See* Status Conference Order, (Dkt. 19). The Court subsequently

continued the deadline to July 5, 2019 (Dkt. 22).

16.    On June 28, 2019, the NRC made its first production of responsive records to Plaintiffs, which consisted of 502 pages of USCIS PowerPoint slides that were disclosed in full, with no material withheld pursuant to any FOIA exemptions. The PowerPoint slides included material regarding the transition of N-400 (naturalization) processing to the electronic USCIS ELIS platform and moving away from paper N-400 adjudications. Among other material pertaining to USCIS N-400 processing, the records included statistics about the number of electronically filed N-400 applications received by USCIS.

17.    On June 28, 2019, the NRC sent Plaintiffs a FOIA response letter and data CD containing the 502 pages of responsive records, and informed Plaintiffs that the NRC continued to review and process responsive records. The letter also informed Plaintiffs that request items 15 and 16 had been referred to DHS, as those two request items sought records created by an agency other than USCIS, *e.g.* item 15 sought records from the DHS Ombudsman Office and item 16 sought records from the DHS Office of Inspector General. The letter again invited Plaintiffs to discuss narrowing the scope of their request, which would "help USCIS more efficiently process and produce records that are responsive to your request." *See* USCIS FOIA Response Letter, dated June 28, 2019, attached hereto as Attachment D.

18.    On July 3, 2019, the parties met and conferred a second time in an attempt to further narrow the scope of the search and the records that Plaintiffs sought. USCIS informed Plaintiffs that it was reviewing over 133 GB of potentially responsive records in this case and that it could take many more months to complete that review and process any responsive records. USCIS receives more FOIA requests than any other agency in the U.S. government and it received over 200,000 FOIA requests in FY 2019. USCIS FOIA staff who were involved in processing Plaintiffs' FOIA request were also responsible for processing many other FOIA requests and thus had to carefully allocate their time. USCIS does not have the resources to devote FOIA staff to processing one FOIA request full-time. *See* July 5, 2019, Supplemental Joint Rule 26(f) Report, (Dkt. 23).

19.   The parties reached agreement to narrow the records search regarding certain items of Plaintiffs' request. They agreed that USCIS will not be required to search Alien file ("A-file") records or produce records that pertain to any specific individual N-400 application. The parties jointly agreed that there are no responsive records for request item #4 because Congress allocates no funding to USCIS for adjudication of N-400's. USCIS is fee-for-service funded instead, and N-400 processing is not funded through Congressional appropriations. The parties agreed to limit the search for any responsive emails to those sent by senior agency management officials rather than rank and file employees. The parties also reached agreement regarding offices and records custodians that should be searched specific to items of Plaintiffs' request. For the sake of brevity in my declaration, I incorporate here and further refer the Court to the parties' search agreement and relative positions regarding each of the twenty items of Plaintiffs' FOIA request, as described further in the parties July 5, 2019, Supplemental Joint Rule 26(f) Report, (Dkt. 23).

20.   On July 11, 2019, the Court held a status conference regarding this case and directed that the parties file another status report on September 10, 2019. The parties were also directed to continue to confer and attempt to resolve remaining disputes over the FOIA request. *See* July 11, 2019, Status Conference Order, (Dkt. 24).

21.   On September 10, 2019, the parties filed another Supplemental Rule 26(f) Report, updating the Court on the status of the parties' negotiations to narrow the scope of the request and the records search. USCIS reported that, based on its review of USCIS records compiled from searches for responsive records, USCIS FOIA had determined an additional records search was necessary. The FOIA staff continued processing compiled documents but determined that the records it was provided were not sufficiently responsive to Plaintiffs voluminous and complex 20 category FOIA request. Thus, continuing a lengthy rolling release of records would not be productive. The FOIA staff then determined that an additional, targeted search for responsive records was necessary. USCIS FOIA reported that it needed to conduct additional searches of FOD, OCFO, Office of Performance and Quality ("OPQ"), OLA, AAO, Office of Investigations ("OI"), OIT, and the ELIS database. *See* September 10, 2019, Supplemental Rule 26(f)

Report, (Dkt. 25).

22. The Court held a status conference on September 12, 2019, and after considering the parties' respective positions, ordered that USCIS shall have until November 15, 2019, to complete its "amassment of the applicable records" and make its final records production to Plaintiffs by December 13, 2019. The Court ordered the parties to file another status report by December 23, 2019. *See* September 12, 2019, Status Conference Order, (Dkt. 26).

### C. Second Search for Responsive Records and Final Records Production

23. On September 16, 2019, the NRC began a second search for records responsive to Plaintiffs' FOIA request. Pursuant to the Supplemental Rule 26(f) Status Report filed on September 10, 2019, (Dkt. 25), NRC FOIA staff contacted the USCIS program offices listed in ¶ 21, *supra*, and provided them additional written and verbal guidance to conduct another search for records responsive to specific items in Plaintiffs' FOIA request. For the sake of brevity in my declaration, I incorporate and refer the Court to the NRC's supplemental records staffing spreadsheet that was prepared by staff during the records search process and that reflects NRC work product, such as notes from processing staff,  the scope of the supplemental records search, the search locations, responses from program offices, and search terms and criteria utilized during the search. *See* NRC Supplemental Staffing Spreadsheet, attached hereto as Attachment E.

24. Between September 16, 2019, and November 12, 2019, NRC FOIA staff contacted, by telephone and email, the agency program offices described in ¶ 21, *supra*, provided the offices records search instructions relative to specific items of Plaintiffs' FOIA request that the NRC deemed warranted an additional records search, and followed up with the offices as necessary to assist their staff with the records search and to compile potentially responsive records. The identified agency program offices then conducted a further search of their databases, email archives, and hardcopy file records and forwarded potentially responsive records that they located to the NRC for its review and processing according to FOIA. Databases searched included ELIS, CLAIMS 4, and agency computer storage drives that may contain relevant Excel spreadsheets, Microsoft Word

documents such as letters and memoranda, PowerPoint presentation slides, and .pdf files that may contain relevant manuals and guidance for processing N-400 applications.[4]

25.    Utilizing search criteria specified in the initial search instructions, as described in ¶ 13, Attachment C, and as summarized in ¶¶ 23-24, Attachment E, the USCIS program offices conducted another records search and compiled responsive records that they forwarded to the NRC for review and processing pursuant to FOIA.

26.    NRC FOIA staff reviewed the records compilation and determined that 624 pages of records and 18 Excel spreadsheets were responsive to the request. The NRC determined there were no responsive records located for request items 6, 7, 13, 17, and 19. The NRC sent a second FOIA response letter to Plaintiffs on December 13, 2019. The letter informed Plaintiffs that after checking with OCFO, which is responsible for managing the USCIS budget, the NRC confirmed that USCIS does not allocate funding to its program offices by immigration application or petition form type – meaning there is no dedicated funding stream solely for N-400 processing, rather, as various USCIS program offices process a wide variety of immigration applications and petitions received from the public, funding is allocated broadly across the USCIS organizational structure, thus there are no records responsive to items 6 and 7 of Plaintiffs' FOIA request. Regarding request item number 13, AAO, which is the subject of item 13, informed the NRC that it does not have any appellate jurisdiction over N-400 applications. As a result, AAO is unable to produce or provide a report on USCIS administrative appeals that are administered by AAO that pertain to N-400 applications, as AAO does not handle N-400 appeals.

The USCIS FOIA response letter again informed Plaintiffs that items 15 and 16 of their FOIA request were referred to the DHS Ombudsman's Office or the DHS Office of

---

[4] Several Excel spreadsheets that USCIS produced to Plaintiffs in its December 13, 2019, records production describe that the responding office searched databases such as USCIS's Computer Linked Application Information Management System 4 ("CLAIMS-4")(an electronic case management system used by USCIS to track and process N-400 applications) and ELIS for responsive records and used specific database search parameters drawn from the criteria specified in Plaintiffs' request, including specifying the form type information sought (N-400); the time period to be queried  (Jan 1, 2016 – Oct. 2, 2018); and the N-400 data type to be retrieved from the database (receipts, denials, requests for evidence (RFE), notice of intent to deny (NOID), median processing times, fees, etc.).

Inspector General, for a response direct to Plaintiffs, as those items of their request sought records created by those components of DHS not USCIS. The NRC did not locate any records responsive to item number 17 of Plaintiffs' request. And the NRC located no records responsive to FOIA request item number 19.  Moreover, contrary to the assertion in request number 19, USCIS has not changed its mission, which is to administer the nation's lawful immigration benefits system. *See* USCIS FOIA Response Letter, dated December 13, 2019, attached hereto as Attachment F.

27. Pursuant to the Court's instructions at the September 12, 2019, status conference, the NRC provided Plaintiffs two compact discs of responsive records along with this letter. One disc contained 18 Excel format spreadsheets; the other disc contained the 624 pages of material referenced in ¶ 26, *supra*, saved in .pdf file format. The disc containing the 18 Excel spreadsheets denoted which of the 20 specific item(s) of Plaintiffs' FOIA request each spreadsheet is responsive to. *Id.*

28. The disc containing the 624 pages of records included seven .pdf files. Each .pdf filename ends with a unique number, *e.g.* 8, 10, 12, 14, etc., which indicates which of the 20 FOIA request item(s) that the file is responsive to. *Id*.

29. The NRC released 450 pages in their entirety and 174 pages were released in part. Only three of the 18 Excel spreadsheets contain limited redacted material, the rest were released in their entirety to Plaintiffs. The NRC determined to release all information from the responsive records except the portions that are appropriately exempt pursuant to 5 U.S.C. § 552 (b)(5), (b)(6) and (b)(7)(C) of FOIA.  The records containing partially redacted material contain box "outlines" showing the location of the redacted material and each record that contains some redacted material also contains the specific FOIA exemption citation that supports withholding the material. However, no record is redacted in full. NRC FOIA staff carefully conducted a line-by-line review of the responsive records and segregated all non-exempt material and released all reasonably segregable, non-exempt information to Plaintiffs. Any further segregation and release of the redacted material would entail releasing information that is appropriately exempt from FOIA production.

30.     The USCIS records searches in this case were reasonably calculated to locate records responsive to Plaintiffs' FOIA request, all files and agency offices likely to contain responsive material were searched, and USCIS has no reason to believe that additional responsive records exist that are within USCIS custody and control.

31.     USCIS is providing a *Vaughn* index justifying the FOIA exemptions it applied to the records it produced to Plaintiffs and that remain in dispute in this litigation. The *Vaughn* index, which I have reviewed in conjunction with the responsive records and that I incorporate into my declaration, describes the records, how they were segregated, and the justification for the FOIA exemptions USCIS applied to the records. *See Vaughn* index, attached hereto as Attachment G.

## CONCLUSION

32.     As described in my declaration, its attachments, and the *Vaughn* index referenced herein, USCIS properly processed Plaintiffs' FOIA request, conducted appropriate FOIA searches reasonably calculated to locate responsive records, and provided Plaintiffs the reasonably segregable, non-exempt information from the responsive records USCIS located. For these reasons, USCIS's actions in response to Plaintiffs' FOIA request were in full compliance with the FOIA.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed in Overland Park, Kansas, on this 16th day of October, 2020.

JILL A. EGGLESTON

*Jill A. Eggleston*

Assistant Center Director
USCIS FOIA & Privacy Act Unit