IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *et al.* ) ) ) ) Plaintiffs, ) ) v. ) ) U.S. CITIZENSHIP AND IMMIGRATION ) SERVICES, DEPARTMENT OF HOMELAND ) SECURITY, *et al*. ) ) Defendants. ) ) | CV-18-08034 GW |

**DEFENDANT'S *VAUGHN* INDEX**

The documents described in this *Vaughn* Index, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)[1], reflect records retained by the Defendant, United States Citizenship and Immigration Services ("USCIS"), that are responsive to the subject matter of the following Complaint in the United States District Court, Central District of California: *Coalition for Humane Immigrant Rights, et al. v. United States Citizenship and Immigration Services*, *et al*. CV-18-08034 GW, filed on September 17, 2018.

---

[1] In *Vaughn v. Rosen*, the D.C. Circuit required agencies to prepare an itemized index, correlating withheld records with a specific FOIA exemption and a justification for applying the exemption to the record in question. *Id.* 484 F.2d 827. The required justification became standard in almost all FOIA cases and is commonly referred to as a *Vaughn* index.

# **INTRODUCTION**

As described in the USCIS Declaration of Jill A. Eggleston ("J. Eggl. Decl."), which was submitted in support of USCIS's Motion for Summary Judgment in this case, USCIS conducted a series of thorough records searches across the agency in response to Plaintiffs' Coalition for Humane Immigrant Rights, *et. al* ("Plaintiffs) complex and burdensome 20-category USCIS Freedom of Information Act ("FOIA") request that is the subject of this litigation. USCIS made two productions of records to Plaintiffs, producing a total of 1,126 pages of responsive records and 18 voluminous Excel spreadsheets in response to their FOIA request. Nearly all records were disclosed to Plaintiffs in their entirety; only 174 pages were produced in part, and minor portions of only three of the Excel spreadsheets were exempt from FOIA disclosure. 15 of the responsive Excel spreadsheets were disclosed to Plaintiffs in full. As further described herein, USCIS carefully reviewed the responsive records and determined to release all information from the responsive records except the portions that are appropriately exempt pursuant to 5 U.S.C. § 552 (b)(5)("Exemption 5"); (b6)("Exemption 6"); and (b)(7)(C)("Exemption 7(C)") of the FOIA. *See* J. Eggl. Decl., ¶¶ 17, 26, Attachments D, F.

Because there were no FOIA exemptions applied to the first USCIS FOIA production made to Plaintiffs (502 pages of records), this *Vaughn* index will address the FOIA exemptions USCIS justifiably applied to the second production of records to Plaintiffs (on 174 pages of .pdf records produced and on three Excel spreadsheets). *Id*.

As described in the J. Eggl. Decl., Attachment F, USCIS provided Plaintiffs two compact discs ("CD"'s) of responsive records. One CD contains the 18 Excel format spreadsheets; the other CD contains the 624 pages of material referenced above, saved in .pdf file format. The CD containing the responsive 18 Excel spreadsheets denotes the specific item(s) of Plaintiff's FOIA request which each spreadsheet is responsive to. The specific FOIA request

item(s) that the spreadsheets are responsive to appear on the right side of each Excel spreadsheet file name listed in the CD, *e.g.* the spreadsheet labeled "October 2016 Fee Collections by Location 5" means that particular spreadsheet is responsive to item 5 of Plaintiff's FOIA request. Some spreadsheets are responsive to more than one item of Plaintiff's FOIA request.

The CD containing the 624 pages of records includes seven .pdf files. Most of the CDs' files are labeled with the USCIS FOIA request number assigned to this case – COW2018001096. Each .pdf filename ends with a unique number, *e.g.* 8, 10, 12, 14, etc., which indicates which of the 20 specific categories of records that Plaintiffs specified in their FOIA request that the file is responsive to. *See* J. Eggl. Decl., ¶¶ 26-29, Attachment F.

This *Vaughn* index will describe the records using the records naming convention that the USCIS National Records Center ("NRC") FOIA staff used on the record files saved on the CD's that the NRC provided to Plaintiffs on December 13, 2019. *Id.*

## DESCRIPTION OF RESPONSIVE RECORDS AND APPLICABLE FOIA EXEMPTIONS

### A. Responsive CD Containing 18 Excel Spreadsheets

As described in the J. Eggl. Decl., ¶ 27, one of the two records CD's provided to Plaintiffs on December 13, 2019, contained 18 Excel spreadsheets created by USCIS that were responsive to certain categories of Plaintiffs' 20-item FOIA request. This section of the *Vaughn* index describes the three spreadsheets that contain information that was redacted pursuant to a FOIA exemption and the bases for any material withheld from disclosure pursuant to an applicable FOIA exemption.

Two of the three spreadsheets that contain redacted material are labeled "Copy of FOIA Litigation Processing N-400 (2) OILA Response 11." These spreadsheets contain similar data,

and both contain 270 rows of data. The NRC's redaction language is slightly different between the two spreadsheets, but both cite to the same exemption to the same material. The third spreadsheet containing redacted material is labeled "N-400 (2) OILA response – 1,3,9," which also appears to contain data similar to the spreadsheets labeled "Copy of FOIA Litigation Processing N-400 (2) OILA Response 11." These spreadsheets were created by OILA (USCIS Office of Intergovernmental and Legislative Affairs, also known as the Office of Legislative Affairs (OLA)). The two spreadsheets labeled "Copy of FOIA Litigation Processing N-400 (2) OILA Response 11" means the NRC designated them as responsive to Plaintiff's request item 11, which sought "all documents relating to inquiries from or responses to members of Congress relating to the delays in processing N-400 applications."[2] They contain 270 rows of data, respectively, that reflect Congressional inquiries made to USCIS on the behalf of constituents. The spreadsheets list the members of Congress that made an N-400 inquiry, the USCIS program office that received the inquiry, the date of receipt, the due date for a response to the member of Congress, the inquiry type, an inquiry number, inquiry status, method of contact, the primary inquiry issue and secondary inquiry issue.

All Congressional inquiries listed on the two spreadsheets pertained to N-400 processing times. The only information redacted from the two spreadsheets was one column of data that contained an "Inquiry Number." This number pertained to a specific individual N-400 applicant who was the subject of the Congressional inquiry and is linked to that individual's A-file. This number, which is personally identifiable information ("PII"), was withheld pursuant to

---

[2] These spreadsheets are also responsive to Plaintiffs' FOIA request items 1, 3, and 9 as well. Item 1 sought "All documents that report to USCIS Headquarters and those generated by USCIS Headquarters on numbers of approvals and denials of N-400 naturalization applications including but not limited to data compilations that in any way provide the reasons for denials of N-400 naturalization applications." Item 3 sought "All documents compiling data submitted by one or more of the agency's locations processing or adjudicating N-400 naturalization applications or produced by USCIS Headquarters related to the delay in processing N-400 applications." And item 9 sought "all data compilations and spreadsheets addressing in whole or in part delays or backlogs in the processing or adjudication of naturalization applications."

Exemption 6, as disclosure of PII of this nature could lead to identification of a particular N-400 applicant, which would constitute a clearly unwarranted invasion of the applicant's personal privacy.

Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." The inquiry number that was withheld is linked to and traceable directly to an N-400 applicant thus it is personal and identifying information about an individual naturalization applicant that is appropriately exempt pursuant to Exemption 6. Moreover, Plaintiffs agreed that USCIS would not be required to produce any records that pertain to any specific individual N-400 application. *See* July 5, 2019, Joint Supplemental Rule 26(f) Report, (Dkt. 23). Accordingly, pursuant to Exemption 6 and the parties' agreement, the individual applicants' "Inquiry Numbers" appearing in these two spreadsheets were appropriately withheld and are exempt from FOIA disclosure. All other information on these spreadsheets was appropriately segregated from the exempt information and was released to Plaintiffs in its entirety.

The third spreadsheet that contains redacted material, "N-400 (2) OILA Response – 1,3,9," contains data similar to the aforementioned spreadsheets but the language used by the NRC to describe the redactions is slightly different; however it, too, cited Exemption 6 as the basis for redacting the "Inquiry Number" column of data. It was also compiled by OILA/OLA and the only information withheld from it is the column of data containing individual applicants' "Inquiry Numbers," which, as described above, is PII exempt from disclosure pursuant to Exemption 6 and the parties agreement, described in their Joint Supplemental Rule 26(f) Report, (Dkt. 23). This spreadsheet is responsive to Plaintiffs' FOIA request items 1, 3, 9, and 11. *See* n. 2. All other information on this spreadsheet was appropriately segregated and

disclosed to Plaintiffs in its entirety.

### B. Responsive CD Containing 624 Pages of .pdf Records

The records CD that the NRC provided to Plaintiffs that contained 624 pages of .pdf format records contained seven labeled files, each containing a set of responsive records. 174 pages were withheld in part, as discussed herein, pursuant to applicable FOIA exemptions. The seven files on the CD are labeled as follows: "CHAP N-400 SOP 170 – 12;" "COW2018001096 76 OCFO – 18;" COW2018001096 78 -14;" "COW2018001096 79 – 8;" "COW2018001096 ELIS SOP 12;" "COW2018001096 redacted – 20;" and "COW2018001096slot74 -10." The last digits in each filename, e.g. "-12;" "-18;" "-20," etc., correspond to the FOIA request item number that the NRC determined the file's records are responsive to.

No records were withheld from the first file on the CD, "CHAP N-400 SOP 170 -12." Its records were produced to Plaintiffs in their entirety. Likewise, no records were withheld from the last file on the CD, "COW2018001096slot74-10." Its records were also produced to Plaintiffs in their entirety.

#### a.) COW2018001096 ELIS SOP 12

The majority of the partially withheld records in this case are found in one file on the .pdf Records CD, *i.e.* filename "COW2018001096 ELIS SOP 12." 128 pages of records were partially redacted from this file pursuant to Exemptions 6 and 7(C). The records in this file consist of 160 PowerPoint training slides used to train USCIS immigration officers on use of the ELIS database to process and adjudicate N-400 applications electronically. The NRC determined that the PowerPoint slides in this file are primarily responsive to Plaintiff's request item 12, which sought "all documents including but not limited to memoranda, guidance, instructions, or

directives issued to facilities, centers, or field offices discussing policy or procedures to be followed in the processing or adjudication of N-400 applications." *See* J. Eggl. Decl., ¶ 7, Attachment A.

The PowerPoint training slides are replete with examples of ELIS data that contains sample N-400 records that are found in the ELIS database. The slides include names, dates of birth, country of birth, addresses, receipt numbers, and alien numbers of N-400 applicants. Wherever a training slide contains such individual N-400 applicant PII, the PII is redacted pursuant to Exemption 6 or Exemption 7(C). 99 slides have partially redacted applicant PII withheld pursuant to Exemption 6. 29 slides have partially redacted applicant PII withheld pursuant to Exemption 7(C).

Similar to the personal privacy protection found in Exemption 6, *see, supra*, 4, Exemption 7(C) provides protection for personal information in law enforcement records. This exemption is the law enforcement counterpart to Exemption 6. Exemption 7(C) provides protection for law enforcement information the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) was applied to redact the N-400 applicant PII that appeared in PowerPoint slides that featured examples of sensitive law enforcement databases such as TECS and FBI databases that contain PII of individuals. Exemption 6 was used to redact similar PII of individual N-400 applicants that did not appear in slides depicting law enforcement databases. Disclosure of individual N-400 applicant PII, as described above, could reasonably be expected to constitute an unwarranted invasion of the applicant's personal privacy (Exemption 7(C)) or would constitute a clearly unwarranted invasion of personal privacy (Exemption 6), thus their PII is appropriately withheld pursuant to Exemptions 6 and 7(C). Moreover, Plaintiffs agreed that USCIS would not be required to produce any records that pertain to any specific individual N-400 application. *See*

July 5, 2019, Joint Supplemental Rule 26(f) Report, (Dkt. 23). For these reasons, the individual N-400 applicant PII was appropriately withheld from 128 PowerPoint training slides that appear in file "COW2018001096 ELIS SOP 12." All reasonably segregable, non-exempt information on these slides was released to Plaintiffs – only N-400 applicant PII was deemed exempt from disclosure and withheld.

### b.) COW2018001096 76 OCFO – 18

The next file that is the source of a number of withholdings is labeled "COW2018001096 76 OCFO – 18." It contains 349 pages of records that are responsive to item number 18 of Plaintiff's FOIA request, *i.e.*, "All documents related to a review, update, or revision of the USCIS Fee Study described here: https://www.federalregister.gov/documents/2016/05/04/2016-10297/us-citizenship-and-immigration-services-fee-schedule." The majority of the records in this file were disclosed to Plaintiffs in their entirety. Only minor portions, as discussed herein, were partially redacted pursuant to Exemptions 5 and 6. The withheld material in this file is described as follows.

### 1. G-1056 USCIS Internal Clearance Routing Sheet

This one page document, at .pdf page 128, dated August 15, 2016, is the routing and clearance document that was transmitted within the agency and documents the various levels of internal agency review and offices that reviewed and cleared a proposed adjustment to the USCIS fee schedule rule. Limited material was withheld from the Executive Summary portion of the routing document that summarized the proposed fee schedule rule change and the agency's reasons for proposing immigration fee adjustments in 2016. The USCIS Fee Schedule Proposed Rule that resulted from the 2016 fee study was published in the Federal Register on May 4, 2016.

*See* 81 Fed. Reg. 26904, May 4, 2016. The Executive Summary reflects predecisional internal agency deliberations regarding a rule change prior to publication of the proposed new fees rule in the Federal Register. Only a minor portion of the Executive Summary, one sentence in fact, was withheld pursuant to Exemption 5's deliberative process privilege. The sentence, the last portion of the Executive Summary, summarized the reasons the agency should enact the fee schedule rule change and agency officials were urged to concur with the proposed rule change.

Exemption 5 of the FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 incorporates the deliberative process privilege, which protects predecisional and deliberative agency material from disclosure. Disclosure of the predecisional and deliberative information withheld in this Executive Summary, contained in the G-1056 USCIS Internal Clearance Routing Sheet, would tend to have a chilling effect on the ability and willingness of agency officials to freely deliberate and concur or non-concur with proposed agency policy changes, such as the fee schedule rule under consideration in this document.

In addition, a telephone number of a reviewing official who signed the routing sheet was redacted pursuant to Exemption 6. Release of this official's direct telephone number to the public would constitute a clearly unwarranted invasion of personal privacy, thus it was appropriately redacted pursuant to Exemption 6.

All reasonably segregable and non-exempt information was segregated from this document and released. Only the one sentence and telephone number described above were withheld pursuant to Exemptions 5 and 6, respectively. All other information on the document was disclosed to Plaintiffs in full. Further segregation and disclosure of this document is not possible because it would result in exempt information being disclosed.

### 2. PowerPoint presentation – FY 2016/2017 Biennial IEFA Fee Review by OCFO to DHS Program Analysis and Evaluation

Eight PowerPoint presentation slides, appearing at pages 134-135, 150, 158-162 of the .pdf file, were partially withheld pursuant to Exemption 5 from this 2016 USCIS OCFO PowerPoint presentation that was delivered to agency management officials considering proposed FY 2016/2017 USCIS immigration fee changes. Only minor portions of the eight PowerPoint slides were redacted and withheld from disclosure because the withheld portions revealed sensitive agency predecisional and deliberative information key to managerial consideration of proposed agency fee increases.

The withheld material on slides 134-135 discussed FY 2016/2017 cost projections associated with USCIS operations, which factored into the fee increase proposal under consideration. Specific information related to proposed changes in refugee admissions and their fiscal impact on USCIS operations was redacted pursuant to Exemption 5 because this projected and estimated information was a key element in the agency's predecisional deliberations on whether to increase immigration fees and publish a new fee schedule in the Federal Register.

The withheld information on the slide at page 150 of the file, just one bullet-pointed item, summarizes a central reason for the USCIS proposal to raise processing fees. This was another key element presented to agency management in this PowerPoint presentation that illustrates a predecisional and deliberative factor in the agency's determination on whether to increase immigration fees in FY 2016/2017.

The withheld information from the slides appearing on pages 158-162 of this PowerPoint also discussed FY 2016 and 2017 cost projections associated with USCIS operations, which factored into the fee increase proposal under consideration. The information consisted of estimated costs and agency workload projections that should be considered by senior agency

management when deciding to issue a new fee schedule rule and resulting increases in fees paid to USCIS for immigration benefits.

All information and data withheld from these slides was a key element in internal predecisional agency deliberations that culminated in publication of a new fee schedule in the Federal Register. Disclosure of such sensitive information would have a chilling effect on the ability of the agency to freely discuss and debate critical agency budgetary items, which would impair the quality of critical agency decisions. USCIS is a fee-for-service funded agency that receives very little in Congressional appropriations, therefore cost projections and public fee increases are critical decisions the agency must regularly make in order to sustain operations. Public disclosure of such predecisional and deliberative material critical to agency sustainment decisions would impair the agency's ability to accurately plan for annual budgetary outlays.

Accordingly, the redacted material was appropriately withheld pursuant to Exemption 5's deliberative process privilege.  All reasonably segregable, nonexempt material was segregated in the PowerPoint slides and disclosed to Plaintiffs.  Only minor portions that discussed specific estimated costs and their projected impact on agency operations are exempt from disclosure.

### 3.  USCIS Public Affairs Guidances, dated May 3, 2016, and October 5, 2016

The 14 pages of USCIS Public Affairs Guidances, appearing at pages 297-311 of this file, and labeled for internal use only, were partially redacted pursuant to Exemptions 5 and 6. Each guidance is described as "Public Affairs Guidance, Talking Points, Response to Queries and Official Statements contain information and answers to specific questions, guidance and instructions, and key messages used for responding to media queries. The following information does not permit you to speak on behalf of USCIS, unless you are a Public Affairs Officer or are explicitly authorized to address external audiences (media, stakeholders, etc.) These materials are

for reference only – please contact OComm's Media Division for assistance or with questions."

This illustrates the predecisional and deliberative nature of these documents, as they were both utilized to promote the proposed fee rule of 2016 to the public and that ultimately was published in the Federal Register. The headers, subheadings, and footers of the documents were released. The "talking points" and "background" sections and specific information that was proposed for official promotion of the proposed fee change is contained in these documents and is appropriately redacted pursuant to Exemption 5's deliberative process privilege. A section called "Q&A (if asked)" is likewise redacted, as it contains predecisional and deliberative information for management officials only and suggested for their use when promoting agency actions to the public. A "Suggested Remarks" section, appearing at pages 309-311, is similarly withheld pursuant to Exemption 5, as it reveals predecisional and deliberative information for management officials and was used to shape and inform their actions when promoting the agency's proposed new fee schedule changes, enacted by public rulemaking in 2016. Accordingly, this information is appropriately exempt from disclosure pursuant to Exemption 5's deliberative process privilege. Disclosure would impair agency officials' ability to engage with the public on proposed agency actions, such as the immigration fee rule proposal that was published in 2016.

An agency official's direct telephone number was withheld on pages 297 and 303, pursuant to Exemption 6, as disclosure would constitute a clearly unwarranted invasion of the official's personal privacy.

All reasonably segregable, nonexempt information was segregated and disclosed to Plaintiffs in these documents. Further segregation and disclosure of material from this material is not possible, as it would disclose information that is exempt from FOIA disclosure.

      c.)    **COW2018001096 79 – 8**

The file labeled "COW2018001096 79 – 8" consists of 12 pages of records that were prepared by senior management staff with OCFO, including the USCIS Chief Financial Officer in August 2018, Joseph Moore. The records are briefing and background material prepared for the USCIS Director in order to prepare him for an upcoming Congressional hearing on the FY 2019 DHS/USCIS budget. One of the primary issues covered in this briefing and background material was how to address Congress about the backlog of pending applications and petitions for immigration benefits that were submitted to USCIS, including the backlog of pending N-400 applications. The records include a series of emails appearing on pages 10-12 of the file that are between Mr. Moore and other senior USCIS management on August 31, 2018, that discussed anticipated issues that the USCIS Director would need to address during an upcoming Congressional budget hearing. The other records in the file, appearing on pages 1-9, are attachments to the emails on pages 10-12. The attachments include a detailed briefing memo prepared for the USCIS Director (pages 1-4) labeled "FY 2019 Budget Hearing Prep." The memo addresses the USCIS backlog of pending immigration benefit applications and petitions and proposals that USCIS had for addressing the backlog, hiring additional staff, and planned budgetary outlays for meeting these agency objectives. Other records include 3 PowerPoint briefing slides (pages 5-7), a "News Release," dated March 22, 2018, about a pilot USCIS webpage that would test four forms using a new methodology for calculating processing times, including the N-400 Applications for Naturalization (page 8, which was released to Plaintiffs in its entirety). Page nine is a blank page bearing only the title "USCIS," which was released in full to Plaintiffs.

The NRC determined that this file was responsive to Plaintiff's FOIA request item number 8, *i.e.* "All documents that address or concern delays or backlogs in the processing time

for naturalization applications." The NRC determined that portions of the emails, briefing memo, and PowerPoint slides (except the slide on page 5, which was released in full), were exempt from disclosure pursuant to Exemptions 5 and 6.

USCIS asserts Exemption 6 only to the USCIS Chief Financial Officer's direct telephone number that appears on his emails on pages 11-12. This is not a public phone number and disclosure of this number to the public would constitute a clearly unwarranted invasion of the Chief Financial Officer's personal privacy and could reasonably be expected to subject the official to harassment and interference with the official's duties. Exemption 6 was not applied to exempt any other information in this file.

Exemption 5 was asserted to exempt portions of the briefing background memo at pages 1-4 that was prepared for the USCIS Director. The withheld portions are exempt from disclosure pursuant to Exemption 5's deliberative process privilege because they reveal sensitive internal agency information about proposed plans to address the USCIS backlog, reasons for the backlog, and possible solutions, including proposals for budgetary outlays to specific programs to address the backlog. This internal briefing memo, prepared solely for the USCIS Director, was not meant to be shared publicly but rather to make suggestions to the USCIS Director for how to prepare for the Congressional hearing and address Congressional questions and concerns that could arise during this important and critical hearing before national decisionmakers that could impact USCIS operations. Similarly, the PowerPoint slides on pages 6-7 discuss the USCIS Field Operations Directorate and Service Center Directorate. The portions redacted pursuant to Exemption 5 includes information about strategic goals for these USCIS program offices, proposals for agency action to reduce the backlog, statistical trends data, and suggested plans and metrics that could be utilized by the agency to address its backlog of pending applications and petitions for immigration benefits, including N-400 applications.

The senior management emails on pages 10-12 also include portions redacted pursuant to Exemption 5's deliberative process privilege because they detail observations about causes of the agency backlog, a brief analysis of steps taken to address the backlog, and proposals for addressing the agency's backlog.

All of the information withheld on the above described pages in file "COW2018001096 79 – 8" is predecisional, as it was prepared in anticipation of critical Congressional testimony and provide insight into agency deliberations and proposals for future agency action to address operational problems, including reducing the N-400 and other application and petition backlogs. These documents also illustrate the internal "give and take" deliberations between senior management at USCIS as they weighed options for addressing core agency operational issues and planned for a critical Congressional hearing that could impact agency operations.

Release of this material would have a chilling effect on management's ability to freely discuss, deliberate, and make important agency decisions. Internal deliberations free from outside interference and influence are necessary elements to quality agency decision-making. It is well-established that agencies should be free to hold internal discussions and deliberate about future agency actions without subjecting them to public disclosure. The purpose of Exemption 5's protection of such sensitive internal agency deliberations is to (1) encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are actually adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action.[3]

---

[3] *See, e.g., Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Jordan v. DOJ*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (*en banc*); *Brown v. EEOC*, No. 09-111, 2010 U.S. Dist. LEXIS 46466, at *9 (W.D. Ky. May 12, 2010) (holding that Exemption 5 was properly applied to prevent potential chilling effect on agency's discussions and undermining of agency's ability to perform its duties).

Accordingly, the material redacted from these 12 pages of material is appropriately exempt from disclosure pursuant to Exemption 5's deliberative process privilege. All other information on these pages was carefully segregated and all non-exempt information was disclosed. Only those portions deemed exempt were withheld. Further segregation and release of information from these pages is not possible as it would disclose information exempt from FOIA disclosure.

      d.)     <u>COW2018001096 78 – 14</u>

The file labeled "COW2018001096 78 – 14" consists of four pages of documents -- one email and three pages of attachments to the email that pertain to "Managing FOD's Operational Use of ELIS.doc.," which is listed in the subject line of the email and is the title of the three-page email attachment, an "Information Memorandum" to the Acting Director of USCIS from the Associate Director, FOD, and labeled "For Official Use Only." The "Information Memorandum," prepared by the Associate Director, FOD, for the USCIS Acting Director, was not disseminated to the public and was for internal use only. The email is dated September 22, 2017, and was sent from the Associate Director, FOD, to the Acting Director, USCIS. Minor portions of the email and more substantive portions of the "Information Memorandum" email attachment are partially redacted pursuant to Exemption 5's deliberative process privilege.

The NRC determined that the material in file "COW2018001096 78 – 14" is responsive to Plaintiffs' FOIA request item number 14: "All documents sent to or prepared by USCIS regarding delays in naturalization applications due to problems implementing or using the Electronic Immigration System ('ELIS')."

The email begins by stating "Please see the attached information memo that describes the approach to managing the use of ELIS. This memo discusses…" This portion of the email was

segregated and disclosed to Plaintiffs. The remaining sentence details some challenges involving the use of the ELIS system for processing immigration benefit applications and petitions that required the agency Director's attention. This sentence was appropriately withheld pursuant to Exemption 5.

Likewise, the three-page "Information Memorandum" delves into substantial detail about the ELIS system and ongoing challenges with the system that agency staff had discovered. The memo also discusses plans for addressing these ELIS challenges. Challenges involving N-400 processing, in particular, are detailed and a proposed plan for remedying the N-400 issue is outlined in the memo portions that are redacted.

The above material was properly redacted and is exempt from disclosure pursuant to Exemption 5's deliberative process privilege. This material is predecisional – it outlines future agency action to address an ongoing problem with processing N-400 applications electronically via the ELIS platform. It suggests additional plans for addressing these problems in the future. The material is also deliberative. It was developed and shared between senior agency management, including the Acting USCIS Director. It reveals agency efforts to ensure its ability to minimize the risk of ineligible applicants receiving immigration benefits, in particular, citizenship via naturalization. The detailed agency actions and plans for future agency actions are just the sort of internal agency predecisional and deliberative material that Exemption 5 is meant to protect from disclosure. Release of this material would have a chilling effect on management's ability to freely discuss, deliberate, and make important agency decisions. Internal deliberations free from outside interference and influence are necessary elements to quality agency decision-making. It is well-established that agencies should be free to hold internal discussions and deliberate about future agency actions without subjecting them to public disclosure. *See also* 13-14, n. 3, *supra*.

The material redacted from these four pages of material is appropriately exempt from disclosure pursuant to Exemption 5's deliberative process privilege. All other information on these pages, such as the opening paragraph, subheadings, title and footer, and concluding sentence, was carefully segregated, determined to be non-exempt from disclosure, and released to Plaintiffs. Only those portions deemed exempt were withheld. Further segregation and release of information from these pages is not possible as it would disclose information exempt from FOIA disclosure.

e.) **COW2018001096 20**

The last file on the CD that contains any redacted material is the file named "COW2018001096 20" that consists of two pages of emails between senior USCIS management and White House officials, labeled "Consultation with THE WHITE HOUSE" (capitalization in the original documents), that were sent on September 28 and 29, 2016. The NRC determined the four emails on these two pages are responsive to Plaintiffs' FOIA request item number 20: "All documents received by USCIS from the White House or forwarded by USCIS to the White House regarding in whole or in part the processing or adjudication of naturalization applications."

The subject of the emails is the USCIS naturalization application backlog and proposed agency responses to the media. One email states, in part, that the discussion is sensitive and the emails detail USCIS proposals to address the naturalization backlog. They also discuss issues surrounding fees that USCIS assesses, particularly for naturalization applications. They also discuss a proposed rule to be published in the Federal Register. The emails contain questions for USCIS management regarding estimates for completing backlog processing and requests for specific data from the White House officials to USCIS management.

The NRC appropriately determined that portions of the emails are exempt from disclosure pursuant to Exemption 5's deliberative process privilege. The material is predecisional – White House officials and senior USCIS management discuss future agency action to address application backlogs, fees, and proposed federal rulemaking, and possible media responses. The material is also deliberative. It outlines agency actions that may be taken to address the naturalization backlog, possible changes in fees assessed by USCIS, and proposed agency responses to the media that should be aligned with Presidential prerogatives and goals.

Release of this material would have a chilling effect on agency management's ability to freely discuss, deliberate, and make important agency decisions, as well as coordinate with the White House and representatives of the President to ensure agency alignment with the goals of the national administration. Ensuring that such sensitive internal deliberations are free from outside interference and influence are necessary elements to quality agency decision-making. It is well-established that agencies should be free to hold internal discussions and deliberate about future agency actions without subjecting them to public disclosure. *See also* 13-14, n. 3, *supra*.

In addition, two direct telephone numbers for a USCIS senior official, including the official's cell phone number, are redacted pursuant to Exemption 6. Disclosure would constitute a clearly unwarranted invasion of the official's personal privacy; it could also subject the individual to public harassment and interfere with the officer's official duties. The name and title of the official was segregated and disclosed to Plaintiffs, only his telephone numbers were redacted pursuant to Exemption 6.

The material redacted from these two pages of material is appropriately exempt from disclosure pursuant to Exemption 6, as stated above, and Exemption 5's deliberative process privilege. All other information on these pages, such as the names of the sender and recipients of the emails, date and time sent, as well as some text in the emails that provides some context

about the subject matter was carefully segregated, determined to be non-exempt from disclosure, and released to Plaintiffs. Only those portions deemed exempt were withheld. Further segregation and release of information from these pages is not possible as it would disclose information exempt from FOIA disclosure.

## CONCLUSION

The vast majority of records disclosed to Plaintiffs in this case were released in their entirety. After a careful, line-by-line review, USCIS appropriately segregated all non-exempt material and disclosed it to Plaintiffs. The few records that are partially redacted are, for the reasons stated herein, exempt from FOIA disclosure.