CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Peter A. Schey (Cal. Bar No. 58232)
Carlos Holguín (Cal. Bar No. 90754)
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email: pschey@centerforhumanrights.org
       crholguin@centerforhumanrights.org
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, et al., <br>     Plaintiffs, <br> v. <br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, DEPARTMENT OF HOMELAND SECURITY, <br>     Defendant. | No. CV 18-08034 GW (MRWx) <br><br> JOINT STATUS REPORT <br><br> Honorable George H. Wu <br> United States District Judge |

/ / /

*Plaintiffs' counsel continued*:

ERIN C. GANGITANO (CAL. BAR NO.229824)
ASIAN PACIFIC ISLANDER LEGAL OUTREACH
1121 Mission St.
San Francisco, CA 94103
Telephone: (415) 567-6255
Facsimile: (415) 567-6248
email: ecgangitano@apilegaloutreach.org


LUIS A. PEREZ JIMENEZ (CAL. BAR NO. 319857)
CINTHIA NATALY FLORES (CAL. BAR NO.304025)
COALITION FOR HUMANE IMMIGRANT RIGHTS
2533 W. Third St., Suite 101 Los
Angeles, CA 90057
Telephone: (213) 353-1333
Facsimile: (213) 353-1344
email: lperez@chirla.org
         cflores@chirla.org

/ / /

The parties met and conferred by telephone on November 6, 2020, and hereby submit following Joint Status Report in regard to the procedure for the further litigation of this Freedom of Information Act (FOIA) case.

The parties propose that they continue to meet and confer in an effort to narrow any differences they may have regarding the scope of the search and the claimed exemptions and file a joint report on these efforts on or before December 4, 2020, including whether Defendant is prepared to conduct any further search or reconsider its claimed exemptions, and whether by that time the parties have reached agreement or have separate proposals on a schedule for the filing of any motions for summary judgment.

## I. Plaintiffs' position

### A. Documents at Issue

Defendant made two releases of documents in this case. First, in June 2019, Defendant released 502 pages, with no redactions. In the second release, in December 2019, Defendant identified 624 pages of records and 18 Excel spreadsheets Defendant stated are responsive to Plaintiffs' FOIA request. A total of 450 pages were released in their entirety [1]. Of the documents Defendant has identified, the remaining documents include:

174 pages (released in part); and

18 Excel spreadsheets (limited portions of three spreadsheets redacted material). *See* Vaugh Index at 2. [Doc.# 57-8.]

The redactions contained in these pages were made pursuant to FOIA exemptions 5 (inter-agency or intra-agency memoranda), 6 (information about individuals in personnel, medical and similar files), and/or 7 (personal information in law enforcement records). *Id.*

---

[1] Defendant's cover letter is unwieldy and unhelpful in tracking specific requests and responses because rather than setting forth each request and then responding with reference to the records produced and exemptions asserted relating to that request, Defendant instead quotes all the 20 requests verbatim, and then provides paragraphs addressing various and assorted requests.

1

On June 28, 2019, the NRC made its first production of responsive records to Plaintiffs, which consisted of 502 pages of USCIS PowerPoint slides that were disclosed in full, with no material withheld pursuant to any FOIA exemptions. Declaration Of Jill A. Eggleston at 10 ("Eggleston Declaration"). [Doc.# 57-1. None of these documents were responsive to Plaintiffs' FOIA requests.

Pursuant to the Court's instructions at the September 12, 2019, status conference, the NRC provided Plaintiffs two compact discs of responsive records along with a letter. One disc contained 18 Excel format spreadsheets; the other disc contained the 624 pages of material. Eggleston Declaration at ¶ 27. 174 pages were released in part. *Id*. ¶ 29. Three of the 18 Excel spreadsheets contain limited redacted material, the rest were released in their entirety to Plaintiffs. *Id*. Defendant also asserts that "there were no responsive records located for request items 6, 7, 13, 17, and 19." *Id* .¶ 26.

Request 6 sought "[a]ll documents regarding USCIS's allocation of funds to its various facilities and field offices for the processing or adjudication of N-400 applications."[2]

---

[2] With regards request Nos. 4, 6 and 7, Defendant has argued that "Congress does not appropriate funds to USCIS for processing N-400 applications … meaning there is no dedicated funding stream solely for N-400 processing, rather …funding is allocated broadly across the USCIS organizational structure, thus there are no records responsive to Item Nos. [4], 6 and 7 of Plaintiffs' FOIA request." Defendants' Status Report at 6 (June 3, 2020) ("Defendants' Status Report") at 33-4. [Doc. # 48.] While Congress may not allocate funding for naturalization processing, it seems highly unlikely that Defendant itself has no communications and *makes no decisions* about the allocation of funds for the processing of N-400 applications. At some level, whether at headquarters or at a processing center, someone almost certainly makes decisions about the allocation of funds for the processing of N-400 applications. Even if, as Defendant claims, its headquarters "does not allocate funding to its program offices by immigration application [type]," *id*. at 3, someone at its "program offices" must make decisions regarding the allocation of funds to different immigration applications. Agents don't show up at work and decide for themselves what types of applications they feel like working on that day.

Request 7 sought "[a]ll l documents relating in whole or in part to decisions by USCIS officials regarding allocations of funds to the processing centers and field offices for the adjudication of N-400 applications."

Request 17 sought "[a]ll complaints filed by naturalization applicants or those acting on behalf of naturalization applicants regarding inappropriate, abusive, or discriminatory treatment of naturalization applicants by USCIS employees."[3]

Request 18 sought "[a]documents related to a review, update, or revision of the USCIS Fee Review Study described here: https://www.federalregister.gov/documents/2016/05/04/2016-10297/us-citizenship-and-immigration-services-fee-schedule.

Request 19 sought "[a]ll documents relied upon, issued in response to, or to implement the change in the mission of USCIS announced on February 22, 2018 described here: https://www.uscis.gov/news/news-releases/uscis-director-l-francis-cissna-new-agency-mission-statement."[4]

Plaintiffs believe it is highly unlikely no documents exist that are responsive to

---

[3] Defendant also alleges it has "not locate[d] any records" responsive to Request 17. Request 17 seeks copies of all complaints filed by naturalization applicants or those acting on behalf of naturalization applicants regarding inappropriate, abusive, or discriminatory treatment of naturalization applicants by USCIS employees. It again seems highly unlikely that of tens of thousands of applicants none have filed any complaints regarding inappropriate, abusive, or discriminatory treatment. Limited discovery on this issue may be appropriate.

[4] Defendant also alleges it has "not locate[d] any records" responsive to Request 19 of the request. *Id*. at 4. Request 19 seeks copies of all documents "relied upon, issued in response to, or to implement the change in the mission of USCIS announced on February 22, 2018 described here: https://www.uscis.gov/news/news-releases/uscis-director-l-francis-cissna-new-agency-mission-statement." It is extremely unlikely that USCIS developed and published its new mission statement and yet nothing in writing was ever prepared that was relied upon to develop the mission statement, or issued in response to or to implement the new mission statement. Limited discovery on this issue may now be appropriate.

Requests 6, 7, 17, and 19.[5]

Defendant states that Item Nos. 15 and 16[6] of the FOIA request were referred to the Department of Homeland Security's Ombudsman's Office or the Department of Homeland Security's Office of Inspector General, for a response directly to Plaintiffs, as those items of the request sought records created by those components of the Department of Homeland Security, not USCIS. Defendants' Status Report at 4.

However, the FOIA does not exempt from disclosure records in the possession of an agency that were "created" by a different agency. Furthermore, neither the Department of Homeland Security's Ombudsman's Office nor the Department of Homeland Security's Office of Inspector General have provided any "response directly to Plaintiffs."

It also seems highly unlikely that USCIS does not possess records of its communications with those responsible for preparing the reports about USCIS referenced in requests 15 and 16.

On October 16, 2020, Defendant filed a *Vaughn* Index (*see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564 (1974)), and supporting declaration. [Docs. ## 57-8 and 57-1.]

Plaintiffs intend to challenge the sufficiency of Defendant's search for records and asserted exemptions. For example, the 14 pages of USCIS Public Affairs Guidances,

---

[5] Request 13 sought "[a]ll documents and data compilations sent to or prepared by the Administrative Appeals Office addressing the number of pending and decided appeals of denials of N-400 applications and the outcome of those appeals. This request does not seek copies of the individual appeals or decisions." Plaintiffs have agreed that no such documents may exist.

[6] Request 15 seeks documents and data relied upon in The Department of Homeland Security Ombudsman 2017 Annual Report To Congress regarding the USCIS (at https://www.dhs.gov/sites/default/files/publications/DHS%20Annual%20Report%202017 0.pdf). Request 16 seeks documents and data relied upon in The Department of Homeland Security Office of Inspector General Report "USCIS Has Been Unsuccessful in Automating Naturalization Benefits Delivery," dated November 30, 2017 (at https://www.oig.dhs.gov/reports/2018/uscis-has-been-unsuccessful-automating-naturalization-benefits-delivery/oig-18-23).

labeled for internal use only, were partially redacted pursuant to Exemptions 5 and 6. Defendants *Vaughn* Index at 11. [Doc. # 57-8.] Each guidance is described as "Public Affairs Guidance, Talking Points, Response to Queries and Official Statements contain information and answers to specific questions, guidance and instructions, and key messages used for responding to media queries. …." *Id*. The *Vaughn* Index states that "[t]his illustrates the predecisional and deliberative nature of these documents, as they were both utilized to promote the proposed fee rule of 2016 to the public and that ultimately was published in the Federal Register." *Id*.  It. Is entirely unclear that the redacted text is appropriately redacted pursuant to Exemption 5's deliberative process privilege inasmuch as the redacted text appears to address talking points on. The fee rule not the predecisional deliberative process of sharing ideas about what the fee rule should say or why it should adopt alternative option.

        Similarly, the *Vaughn* Index states that the file labeled "COW2018001096 79 – 8" consists of 12 pages of records that were prepared by senior management staff with OCFO, including the USCIS Chief Financial Officer in August 2018, Joseph Moore. *Id*. at 13. The records were "repared for the USCIS Director in order to prepare him for an upcoming Congressional hearing on the FY 2019 DHS/USCIS budget." One of the primary issues covered in this document was "how to address Congress about the backlog of pending applications and petitions for immigration benefits that were submitted to USCIS, including the backlog of pending N-400 applications." *Id*. The records include emails that discussed "anticipated issues that the USCIS Director would need to address during an upcoming Congressional budget hearing …" *Id*. It is entirely unclear that written communications regarding how a Government official should address Congress "about the backlog of pending applications and petitions" involved a predecisional deliberative process of sharing ideas about what the content of a fee rule or any other UCIS policy decision.

        B.    <u>Discovery</u>

        The parties agree that district courts typically decide FOIA cases on summary judgment. "Most FOIA cases are resolved by the district court on summary judgment,

with the district court entering judgment as a matter of law." *See Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) (en banc); *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008).

Plaintiffs believe they may be required to propound limited discovery in this matter. Should they propound discovery, Defendant may object to the discovery and the Court or a Magistrate Judge may be called upon to adjudicate any discovery dispute.

## II. Defendant's Position

### A. Procedural History

Following the parties' previous status report (ECF 53), the Court issued a Minute Order taking the June 22, 2020 status conference off-calendar and setting deadlines for: (1) Defendant to file a *Vaughn* index; and (2) the parties to meet and confer and file joint report regarding the remaining issues/disputes. (ECF 54).

Following the Court's approval of a stipulation to continue the deadlines thirty days (ECF 56), Defendant filed its *Vaughn* index on October 16, 2020, including the Declaration of Jill A. Eggleston ("Eggleston Declaration"), Assistant Center Director in the Freedom of Information and Privacy Act (FOIA/PA) Unit, National Records Center (NRC), United States Citizenship and Immigration Services (USCIS). (ECF 57-1.) The Eggleston Declaration describes, generally, agency procedures for processing FOIA requests for access to agency records and, more specifically, agency action taken in response to the Plaintiffs' FOIA request in this case. In addition, the Declaration describes in detail the initial search for records in this case, efforts to meet and confer with Plaintiffs regarding the scope of the request, and the second search for records. Eggleston Decl., at ¶¶ 10-31.

The Eggleston Declaration includes a *Vaughn* index that describes: (1) the records USCIS produced to Plaintiffs in response to their FOIA request; (2) the records that were withheld in part; and (3) the bases, pursuant to FOIA, that justify their exemption from disclosure. *See* Attachment G (57-8). The Declaration, attachments and index, comprise

Defendant's *Vaughn* index in this case.[7] As set forth in the *Vaughn* index, some information was withheld from disclosure, pursuant to one or more of the following FOIA Exemptions: 5 (inter-agency and intra-agency documents), and 6 and 7(C) (personnel, medical and similar files). *See* 5 U.S.C. §§ 552(b)(5), (6), and 7(C).

In accordance with the Court's Order, the parties were then required to meet and confer and file a joint report regarding the remaining issues/disputes in this case by October 23, 2020. (ECF 56.) Defendant reached out to Plaintiffs' counsel on September 23, 2020 by email to schedule a date for the parties to meet and confer, but did not receive a response. On October 20, 2020, after filing the *Vaughn* index, Defendant again sent an email to Plaintiffs' counsel regarding a meeting, but again received no response. Finally, on the date the Joint Report was due (October 23, 2020), Defendant proposed a dismissal of the case, if Plaintiffs did not intend to proceed. Plaintiffs' counsel then proposed a stipulation to extend the deadlines, to allow additional time for Plaintiffs to review the *Vaughn* index. (ECF 58.)

The Court granted the Stipulation and set the following deadlines:

- Joint Status Report due by November 6, 2020
- The Status Conference is continued to November 9, 2020 at 8:30 a.m.

On Friday, November 6, 2020, having heard nothing further from Plaintiffs, counsel for Defendant reminded Plaintiffs' counsel that a joint report was due that day, and inquired about how Plaintiffs intended to proceed in this matter. At about 4:00 p.m., counsel for defendant received this proposed Joint Status Report.

B.      Position Re: Documents at Issue and *Vaughn* Index

Defendant remains willing to meet and confer with Plaintiffs' counsel regarding the matters set forth above. However, Defendant has not had an opportunity to review

---

[7] A *Vaughn* index is a document that is prepared in litigation to justify withholding of information under the FOIA. The term arose from the case of *Vaughn v. Rosen*, 484 F.2d 820, 823-25 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), in which such an index was required to determine the validity of the agency's withholdings. *See also Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 688 (9th Cir. 2012) (describing requirements for *Vaughn* Index).

7

1  the information provided by Plaintiffs in this Joint Status Report, and the parties have
2  not meaningfully met and conferred about the search, the *Vaughn* index, or any
3  remaining issues to be litigated.
4        Defense counsel agrees that additional time is necessary to allow for a meeting.
5  However, Defendant requests that Plaintiffs' counsel commit to a meeting on a mutually
6  agreeable date on or before December 4, 2020.  Thereafter, should the parties agree to
7  any further search or release of records, Defendant would ask for additional time to
8  complete that search before a summary judgment motion schedule is set.  Counsel for
9  Defendant will work to obtain proposed dates for a meeting and to include NRC counsel
10 and necessary FOIA staff before the Status Conference on Monday morning, November
11 9, 2020.
12     C.   <u>Discovery</u>
13       Defendant maintains that Plaintiffs are not entitled to discovery, if at all, until after
14 the Defendant files its Motion for Summary Judgment and *Vaughn* Index/declaration(s).
15 Discovery is the exception, not the rule, in FOIA cases. *Lane v. Dep't of Interior*, 523
16 F.3d 1128, 1134 (9th Cir. 2008).
17       As set forth in Plaintiffs' portion of the Joint Report, the parties agree that district
18 courts typically decide FOIA cases on summary judgment. "Most FOIA cases are
19 resolved by the district court on summary judgment, with the district court entering
20 judgment as a matter of law." *See Animal Legal Def. Fund v. U.S. Food & Drug Admin.*,
21 836 F.3d 987, 989 (9th Cir. 2016) (en banc); *Lane*, 523 F.3d at 1134. At the summary
22 judgment stage, the government is the moving party and ordinarily submits affidavits
23 and argument to establish the applicability of an exemption as to withheld records, the
24 adequacy of its search for responsive records, and any other matters necessary to support
25 the motion.  Courts typically permit the government to move for summary judgment
26 before allowing any discovery to take place. *Id*.; *see also, Lawyers' Comm. for Civil
27 Rights of S.F. Bay Area v. U.S. Dep't of the Treasury*, 534 F.Supp.2d 1126, 1131 (N.D.
28 Cal. 2008) ("Procedurally, district courts typically decide FOIA cases on summary

1  judgment before a plaintiff can conduct discovery."); *Lovaas v. Bureau of Land Mgmt.*,
2  393 F. App'x 527, 527 (9th Cir. 2010) (holding that district courts have discretion to
3  grant summary judgment in FOIA cases without allowing discovery).

4  Discovery in a FOIA case is generally <u>not</u> available "where an agency's
5  declarations are reasonably detailed, submitted in good faith and the court is satisfied
6  that no factual dispute remains." *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29,
7  35 (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003); *see, e.g., SafeCard Servs. v.
8  SEC*, 926 F.2d 1197, 1200-02 (D.C. Cir. 1991) (affirming decision to deny discovery as
9  to adequacy of search, on ground that agency's affidavits were sufficiently detailed).

10  When discovery is sought prior to the time the government moves for summary
11  judgment and submits its supporting affidavits and memorandum of law, courts will
12  frequently deny the request or grant a protective order staying discovery on the grounds
13  that it is premature. *See, e.g., Lane*, 523 F.3d at 1134-35 (holding that district court's
14  "delay of discovery" with respect to plaintiff's FOIA claim until after summary
15  judgment "was certainly within its discretion.")  Here, Defendant has provided an initial
16  declaration in this case. The parties have not meaningfully met and conferred about
17  Plaintiffs' position set forth above, regarding either the search or the basis for the
18  withholdings set forth in the *Vaughn* index. However, Defendant is certainly willing to
19  discuss these matters and exhaust the possibility of additional searches and/or a revised
20  *Vaughn* index. Defendant will then file a final declaration(s) with Defendant's Motion
21  for Summary Judgment. At that time, Plaintiffs will have an opportunity to address the
22  adequacy of the search and raise objections to the agency's basis for withholding, if any.
23  Thus, discovery is premature at this stage.

25  / / /

|   |   |   |
|---|---|---|
| | | Respectfully submitted, |
| Dated: November 6, 2020 | | NICOLA T. HANNA<br>United States Attorney<br>DAVID M. HARRIS<br>Assistant United States Attorney<br>Chief, Civil Division<br>JOANNE S. OSINOFF<br>Assistant United States Attorney<br>Chief, General Civil Section, Civil Division |
| | | */s/ Alarice M. Medrano* |
| | | ALARICE M. MEDRANO<br>Assistant United States Attorney |
| | | Attorneys for Defendant, United States Citizenship and Immigration Services, Department of Homeland Security |
| Dated: November 6, 2020 | | PETER A. SCHEY<br>CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW |
| | | */s/ peter schey* |
| | | Peter Schey<br>One of the Attorneys for Plaintiffs |

## ATTESTATION UNDER LOCAL RULE 5-4.3.4

I, Peter A. Schey, am the ECF User whose ID and password are being used to file this Joint Status Report. In compliance with Local Rules 5-4.3.4(a)(2), I hereby attest that Defendant's counsel, Alarice Medrano, has concurred in this filing.

DATED: November 6, 2020

*/s/ Peter A. Schey*

Peter Schey
One of the Attorneys for Plaintiffs