NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section, Civil Division
ALARICE M. MEDRANO (Cal. Bar No. 166730)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-0460
    Facsimile: (213) 894-7819
    E-mail: Alarice.Medrano@usdoj.gov

Attorneys for Defendant, United States Citizenship and
Immigration Services, Department of Homeland Security

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *ET AL.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, DEPARTMENT OF HOMELAND SECURITY,<br><br>    Defendant. | No. CV 18-08034 GW (MRWx)<br><br>Motion Hearing<br>Date:  February 18, 2021<br>Time:  8:30 a.m.<br>Ctrm:  First Street Courthouse<br>      350 W. 1st Street<br>      Ctrm. #9D, 9th Floor<br>      Los Angeles, CA 90012<br><br>Honorable George H. Wu<br>United States District Judge |

1. DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;

2. MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION;

[EVIDENCE IN SUPPORT OF MOTION FILED SEPARATELY (ECF 57)]

# TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ................1

I.      INTRODUCTION ............................................................................ 2

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY......................... 2

    A.      Plaintiffs' FOIA Request............................................... 2

    B.      Initial Search by USCIS ................................................5

    C.      Attempts to Negotiate the Scope of Search.......................7

    D.      USCIS's First Records Production...................................7

    E.      Continuing Attempts to Negotiate Scope of Search ................... 8

    F.      Second Search for Responsive Records ............................9

    G.      USCIS's Second Records Production ...........................10

    H.      Segregability Analysis...............................**Error! Bookmark not defined.**

    I.      *Vaughn* Index .................................**Error! Bookmark not defined.**

III.    STANDARD OF REVIEW IN FOIA CASES......**Error! Bookmark not defined.**

IV.     ARGUMENT......................................................**Error! Bookmark not defined.**

    A.      Defendant Conducted Reasonable Search for Records.... **Error! Bookmark not defined.**

    B.      Defendant Properly Withheld Documents Under Exemption 5 ..........**Error! Bookmark not defined.**

        1.      Exemption 5 – Inter-Agency or Intra-Agency Memorandums .**Error! Bookmark not defined.**

        2.      Exemption 6 & 7(c) – Unwarranted Invasion of Personal Privacy.............................................**Error! Bookmark not defined.**

V.      CONCLUSION.....................................................**Error! Bookmark not defined.**

i

1

2

3 **TABLE OF AUTHORITIES**

4 **PAGE**

5 **CASES**

6 ACLU of Southern Cal. v. DHS,
     2012 WL 5342411 (C.D. Cal. Oct. 25, 2012) .................................................. 13, 14
7
Baker v. United States,
8    817 F.2d 560 (9th Cir. 1987) ........................................................................... 12

9 Citizens Comm'n on Human Rights v. FDA,
     45 F.3d 1325 (9th Cir. 1995) ........................................................................... 13
10
Clay v. Dep't of Justice,
11    680 F. Supp. 2d 239 (D.D.C. 2010).................................................................. 14

12 Def. of Animals v. NIH,
     543 F. Supp. 2d 83 (D.D.C. 2008).................................................................... 14
13
Dep't of Justice v. Tax Analysts,
14    492 U.S. 136, 109 S. Ct. 2841, 106 L. Ed. 2d 112 (1989) .................................... 12

15 Forest Service Empls. for Envtl. Ethics v. U.S. Forest Serv.,
     524 F.3d 1021 (9th Cir. 2008) ......................................................................... 17
16
Kissinger v. Reporters Comm. for Freedom of Press,
17    445 U.S. 136, 100 S. Ct. 960, 63 L. Ed. 2d 267 (1980) ................................... 12, 13

18 Lahr v. National Transp. Safety Bd.,
     569 F.3d 964 (9th Cir. 2009) ........................................................................... 18
19
Lane v. Dept. of Interior,
20    523 F.3d 1128 (9th Cir. 2008) ...................................................................... 13, 14

21 Lewis v. IRS,
     823 F.2d 375 (9th Cir. 1987) ........................................................................... 13
22
Maynard v. CIA,
23    986 F.2d 547 (1st Cir. 1993)............................................................................ 15

24 NLRB v. Sears, Roebuck & Co.,
     421 U.S. 132 (1975).......................................................................................... 16
25
Oglesby v. Dep't of the Army,
26    920 F.2d 57 (D.C. Cir. 1990)........................................................................... 13

27
                                       ii
28

Rosenfeld v. Dep't of Justice,
    57 F.3d 803 (9th Cir. 1995) ..................................................................... 18

Safecard Servs., Inc. v. SEC,
    926 F.2d 1197 (D.C. Cir. 1991) ............................................................... 14

Spurlock v. FBI,
    69 F.3d 1010 (9th Cir. 1995) ................................................................... 12

Steinberg v. Dep't of Justice,
    23 F.3d 548 (D.C. Cir. 1994) ................................................................... 14

Vaughn v. Rosen,
    484 F.2d 820 (D.C. Cir. 1973) ................................................................. 12

Weisberg v. Dep't of Justice,
    705 F.2d 1344 (D.C. Cir. 1983) ........................................................ 13, 14

Weisberg v. U.S. Dep't of Justice,
    627 F.2d 365 (D.C. Cir. 1980) ................................................................. 13

Wiener v. FBI,
    943 F.2d 972, n.6 (9th Cir. 1991) ............................................................ 12

Yonemoto v. Department of Veterans Affairs,
    686 F.3d 681 (9th Cir. 2012) ................................................................... 13

Zemansky v. U.S. EPA,
    767 F.2d 569 (9th Cir. 1985) ................................................................... 13


**STATUTES**

5 U.S.C. § 552 .......................................................................................... 2

5 U.S.C. § 552(a)(4)(B) .......................................................................... 12

5 U.S.C. § 552(a)(6)(B) ............................................................................ 5

5 U.S.C. § 552(b)(5) ......................................................................... 11, 16

5 U.S.C. § 552(b)(6) ..................................................................... 11, 16, 17

5 U.S.C. § 552(b)(7)(C) ................................................................. 11, 16, 17


**RULES**

Federal Rule of Civil Procedure 56 ........................................................... 1

iii

## **<u>NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT</u>**

PLEASE TAKE NOTICE that on February 18, 2021, at 8:30 a.m.[1], or as soon thereafter as the matter may be heard, Defendant United States Citizenship and Immigration Services, Department of Homeland Security will bring on for hearing the within Motion for Summary Judgment, before the Honorable George H. Wu, United States District Judge, in Courtroom 9D of the First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012.

Defendant respectfully moves this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56, on the grounds that there is no genuine dispute of material fact and Defendant is entitled to judgment on the entire case as a matter of law. This motion is based upon this Notice, the Memorandum of Points and Authorities filed herein, the Declaration of Jill A. Eggleston (ECF 57-1), and the exhibits attached thereto (ECF 57-2 – 57-8), including the *Vaughn* index (ECF 57-8), the pleadings previously filed in this action, and any oral argument permitted at the hearing on this motion.

This motion is made following a conference of counsel as required by Local Rule 7-3, which took place on November 6, 2020, regarding Defendant's contemplated motion for summary judgment.

Dated:  December 18, 2020

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section, Civil Division

*/s/ Alarice M. Medrano*

_____
ALARICE M. MEDRANO
Assistant United States Attorney

Attorneys for Defendant, United States
Citizenship and Immigration Services,
Department of Homeland Security

[1] *See* Minute Order, dated November 9, 2020 (ECF 61).

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Coalition for Humane Immigrant Rights of Los Angeles, National Partnership for New Americans, UnidosUS, CASA, Mi Familia Vota, Michigan United, El Rescate, New York Immigration Coalition, and One America (collectively, "Plaintiffs") bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, seeking access to information about the processing of N-400 (naturalization) applications "relating to the time period January 1, 2016 to the present," that they allege are contained in the records of Defendant United States Citizenship and Immigration Services ("USCIS"), Department of Homeland Security ("DHS").

Defendant has satisfied all of its obligations with respect to Plaintiffs' FOIA request. Defendant conducted an adequate search for records in response to the request, and released the information that is not subject any FOIA exemption. These facts are not reasonably in dispute. Because there are no material facts in dispute with regard to the adequacy of the search or the withholding of information, Defendant is entitled to summary judgment with respect to all claims asserted by Plaintiffs in this action.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Plaintiffs' FOIA Request

Plaintiffs' FOIA request was mailed to the National Records Center ("NRC") in a letter dated August 6, 2018. Declaration of Jill A. Eggleston ("Eggleston Decl."), ¶ 7, fn. 2. It was not received by the NRC FOIA division and scanned into the NRC FOIA processing system and database until September 12, 2018. *Id.*

Plaintiffs' FOIA request was a complex request that sought access to 20 different categories of records that pertained to USCIS processing of N-400 (naturalization) applications "relating to the time period January 1, 2016 to the present," as follows:

1. All documents that report to USCIS Headquarters and those generated by USCIS Headquarters on numbers of approvals and denials of N-400 naturalization applications including but not limited to data compilations that in

2

any way provide the reasons for denials of N-400 naturalization applications.

2. All documents compiling data submitted by one or more of the agency's locations processing or adjudicating N-400 naturalization applications or produced by USCIS Headquarters related to the volume of or reasons for RFEs ("Requests For Evidence") and NOID ("Notices of Intent to Deny") notifications issued in N-400 cases.

3. All documents compiling data submitted by one or more of the agency's locations processing or adjudicating N-400 naturalization applications or produced by USCIS Headquarters related to the delay in processing N-400 applications.

4. All documents relating to funds allocated by Congress for the processing and/or adjudication of N-400 applications.

5. All documents compiling data that show the fees received with naturalization applications, excluding documents relating to individual cases such as receipts, deposits, etc.

6. All documents regarding USCIS's allocation of funds to its various facilities and field offices for the processing or adjudication of N-400 applications.

7. All documents relating in whole or in part to decisions by USCIS officials regarding allocations of funds to the processing centers and field offices for the adjudication of N-400 applications.

8. All documents that address or concern delays or backlogs in the processing time for naturalization applications.

9. To the extent not provided in response to Request Number 8, all data compilations and spreadsheets addressing in whole or in part delays or backlogs in the processing or adjudication of naturalization applications.

10. To the extent not provided in response to a separate request, all documents reporting on: (a) the volume of naturalization applications received; (b) where the applications were received; (c) where the applications were processed and

3

adjudicated; and (d) how long it took to fully process and adjudicate the naturalization applications.

11. All documents relating to inquiries from or responses to members of Congress relating to the delays in processing N-400 applications.

12. All documents including but not limited to memoranda, guidance, instructions, or directives issued to facilities, centers, or field offices discussing policy or procedures to be followed in the processing or adjudication of N-400 applications.

13. All documents and data compilations sent to or prepared by the Administrative Appeals Office addressing the number of pending and decided appeals of denials of N-400 applications and the outcome of those appeals. This request does not seek copies of the individual appeals or decisions.

14. All documents sent to or prepared by USCIS regarding delays in naturalization applications due to problems implementing or using the Electronic Immigration System ("ELIS").

15. All documents and data relied upon in The Department of Homeland Security Ombudsman 2017 Annual Report To Congress regarding the USCIS (at https://www.dhs.gov/sites/default/files/publications/DHS%20Annual%20Report%202017_0.pdf

16. All documents and data relied upon in The Department of Homeland Security Office of Inspector General Report "USCIS Has Been Unsuccessful in Automating Naturalization Benefits delivery," dated November 30, 2017 (at https://www.oig.dhs.gov/reports/2018/uscis-has-been-unsuccessful automatingnaturalization-benefits-delivery/oig-18-23).

17. All complaints filed by naturalization applicants or those acting on behalf of naturalization applicants regarding inappropriate, abusive, or discriminatory treatment of naturalization applicants by USCIS employees.

4

18. All documents related to a review, update, or revision of the USCIS Fee Study described here: https://www.federalregister.gov/documents/2016/05/04/2016-10297/us-citizenship-and-immigration-services-fee-schedule.

19. All documents relied upon, issued in response to, or to implement the change in the mission of USCIS announced on February 22, 2018 described here: https://www.uscis.gov/news/news-releases/uscis-director-l-francis-cissna-newagency-mission-statement

20. All documents received by USCIS from the White House or forwarded by USCIS to the White House regarding in whole or in part the processing or adjudication of naturalization applications.

*See* Eggleston Decl., ¶ 7, and Attach. A (ECF 57-2).

On September 19, 2018, USCIS issued an acknowledgement letter to Plaintiffs, confirming receipt of the FOIA request and informing Plaintiffs that the request was assigned to USCIS's complex FOIA processing track (Track II). *Id.*, ¶¶ 8-9, and Attach. B (ECF 57-3). USCIS also invoked its right to additional processing time pursuant to 5 U.S.C. § 552(a)(6)(B). *Id.* Further, the letter invited Plaintiffs to narrow their FOIA request in order to be eligible for placement in a faster FOIA processing track. *Id.*

B.    Initial Search by USCIS

The NRC FOIA staff determined that numerous USCIS program offices might have responsive records and requested that the following offices conduct a search of their records systems and databases:

- Executive Secretariat ("EXSO") (which consists of senior USCIS managerial offices, including the Office of the USCIS Director and Deputy Director);

- Field Office Directorate ("FOD") (which manages USCIS field and district immigration adjudication offices, including those that process N-400 applications, located across the United States);

- Office of Chief Financial Officer ("OCFO") (which manages the USCIS budget and fiscal operations);

5

- Office of Policy and Strategy ("OP&S") (which establishes USCIS policy guidance, directives, and implements agency compliance with statutory and regulatory requirements that affect agency operations);

- Office of Legislative Affairs ("OLA") (which serves as a liaison between Congress and USCIS);

- Administrative Appeals Office ("AAO") (which adjudicates administrative appeals of certain USCIS immigration adjudications); and

- The Office of Information Technology ("OIT") (which manages USCIS technology operations).

Eggleston Decl., ¶¶ 10-12. In addition, NRC staff provided specific written instructions to each of the agency program offices, included the search time frame (January 1, 2016 – October 10, 2018), identified the specific item(s) of Plaintiffs' FOIA request that the program office should respond to, and provided detailed search terms to be utilized for each item of the request. *Id*., ¶ 13, and Attach. C (ECF 57-4). The NRC staff identified the types of documents to search for, databases to search, e.g. the Electronic Immigration System ("ELIS")(a computerized USCIS immigration application filing system, including N-400 naturalization applications, available for use by the public), agency email, electronic records consisting of PowerPoint training slides, Excel spreadsheets, and hardcopy documents maintained by the program offices. *Id*.

The program offices compiled over 133 GB of potentially responsive records that were forwarded to the NRC for review. *Id*., ¶ 14. This volume of records nearly crashed the NRC's de-duplication and records search software, known as Veritas. *Id*. Thus, the NRC and USCIS program offices determined that Plaintiffs' FOIA request was overly broad and burdensome, and sought to meet and confer with Plaintiffs in an attempt to further narrow the scope of their request and search parameters and conduct another records search. *Id*.

\\\
\\\

6

1    C.    Attempts to Negotiate the Scope of Search

2        The parties met and conferred on February 21, 2019, to discuss narrowing the

3    scope of Plaintiffs' FOIA request. *See* Eggleston Decl., ¶ 15. Following the meeting, on

4    March 12, 2019, Defendant outlined the various issues regarding Plaintiffs' FOIA

5    request in an email to Plaintiffs. *Id*. Plaintiffs' counsel acknowledged receipt of the email

6    the same day but did not respond further. *Id.*; *see also*, Supplemental Rule 26(f) Report,

7    (ECF 18), and Ex. B (ECF 18-2).

8        On March 25, 2019, the Court directed that the parties to file a joint status report

9    regarding the parties' agreements on scope and timing by June 19, 2019. (ECF 19.) The

10   Court subsequently continued the deadline to July 5, 2019. (ECF 22.)

11   D.    USCIS's First Records Production

12       On June 28, 2019, Defendant made its first production of responsive records to

13   Plaintiffs, which consisted of 502 pages of USCIS PowerPoint slides that were disclosed

14   in full, with no material withheld pursuant to any FOIA exemptions. *See* Eggleston

15   Decl., ¶¶ 16-17, and Attach. D (ECF 57-5). The PowerPoint slides included material

16   regarding the transition of N-400 (naturalization) processing to the electronic USCIS

17   ELIS platform and moving away from paper N-400 adjudications. *Id*. Among other

18   material pertaining to USCIS N-400 processing, the records included statistics about the

19   number of electronically filed N-400 applications received by USCIS. *Id*. Defendant

20   informed Plaintiffs that it continued to review and process responsive records. *Id*.

21   Defendant also informed Plaintiffs that items 15 and 16 of the request had been referred

22   to DHS, as those two request items sought records created by an agency other than

23   USCIS.[2] *Id*. The letter again invited Plaintiffs to discuss narrowing the scope of their

24   request. *Id*.

25   \\\

26   \\\

27   ————————————————

28       [2] Item 15 sought records from the DHS Ombudsman Office and item 16 sought records from the DHS Office of Inspector General.

7

E.     Continuing Attempts to Negotiate Scope of Search

On July 3, 2019, the parties met and conferred a second time in an attempt to further narrow the scope of the search and the records that Plaintiffs sought. *See* Eggleston Decl., ¶ 18. USCIS informed Plaintiffs that it was reviewing over 133 GB of potentially responsive records in this case and that it could take many more months to complete that review and process any responsive records. *Id*.

The parties reached agreement to narrow the records search regarding certain items of Plaintiffs' request. Eggleston Decl., ¶ 19; July 5, 2019 Supplemental Joint Rule 26(f) Report (ECF 23) (setting forth the parties' search agreement and relative positions regarding each of the twenty items of Plaintiffs' FOIA request). The parties agreed that USCIS will not be required to search Alien file ("A-file") records or produce records that pertain to any specific individual N-400 application. *Id*. The parties also agreed that there are no responsive records for item 4 of the request because Congress allocates no funding to USCIS for adjudication of N-400s. *Id*. The parties agreed to limit the search for any responsive emails to those sent by senior agency management officials rather than rank and file employees. *Id*. The parties also reached agreement regarding offices and records custodians that should be searched specific to items of Plaintiffs' request. *Id*.

On July 11, 2019, the Court held a status conference and directed that the parties file another status report on September 10, 2019. *See* Eggleston Decl., ¶ 20; July 11, 2019 Status Conference Order (ECF 24). The parties were also directed to continue to confer and attempt to resolve remaining disputes over the FOIA request. *Id*.

On September 10, 2019, the parties filed another Supplemental Rule 26(f) Report, updating the Court on the status of the parties' negotiations to narrow the scope of the request and the records search. *See* Eggleston Decl., ¶ 21; September 10, 2019 Supplemental Rule 26(f) (ECF 25). Based on its review of the records compiled at that point, Defendant determined an additional, targeted search of FOD, OCFO, Office of Performance and Quality ("OPQ"), OLA, AAO, Office of Investigations ("OI"), OIT, and the ELIS database was necessary. *Id*. The FOIA staff continued processing

8

documents but determined that the documents were not sufficiently responsive to Plaintiffs' request. *Id*. Thus, continuing a lengthy rolling release of records would not be productive. *Id*.

The Court held a status conference on September 12, 2019, and after considering the parties' respective positions, ordered that USCIS to complete its "amassment of the applicable records" by November 15, 2019, and make its final records production to Plaintiffs by December 13, 2019. *See* Eggleston Decl., ¶ 22; September 12, 2019 Status Conference Order (ECF 26). The Court ordered the parties to file another status report by December 23, 2019. *Id*.

F.    Second Search for Responsive Records

On September 16, 2019, the NRC began a second search for records responsive to Plaintiffs' FOIA request. *See* Eggleston Decl., ¶¶ 23-24, and Attach. E [NRC Supplemental Staffing Spreadsheet] (ECF 57-6). Pursuant to the Supplemental Rule 26(f) Status Report filed on September 10, 2019 (ECF 25), NRC FOIA staff provided the USCIS program offices listed above with additional written and verbal guidance to conduct another search for records responsive to specific items in Plaintiffs' FOIA request. *Id*. The identified agency program offices then conducted a further search of their databases, email archives, and hardcopy file records and forwarded potentially responsive records to the NRC for review and processing. *Id*., ¶¶ 23-25.  Databases searched included ELIS, CLAIMS 4, and agency computer storage drives that may contain relevant Excel spreadsheets, Microsoft Word documents such as letters and memoranda, PowerPoint presentation slides, and .pdf files that may contain relevant manuals and guidance for processing N-400 applications. *Id*., ¶ 24.

NRC FOIA staff reviewed the records compilation and determined that 624 pages of records and 18 Excel spreadsheets were responsive to the request. *See* Eggleston Decl., ¶ 26. Defendant determined there were no responsive records located for items 6, 7, 13, 17, and 19. *Id*. Items 15 and 16 had already been referred to other agencies. *Id*. \\\

G.    USCIS's Second Records Production

On December 13, 2019, the NRC sent a second FOIA response to Plaintiffs, informing them of the following:

1)  In regard to items 6 and 7 of Plaintiffs' FOIA request, no records exist. After checking with OCFO, which is responsible for managing the USCIS budget, the NRC confirmed that USCIS does not allocate funding to its program offices by immigration application or petition form type. Thus, there is no dedicated funding stream solely for N-400 processing. Rather, as various USCIS program offices process a wide variety of immigration applications and petitions received from the public, funding is allocated broadly across the USCIS organizational structure.

2)  In regard to item 13, AAO, informed the NRC that it does not have any appellate jurisdiction over N-400 applications. As a result, AAO is unable to produce or provide a report on USCIS administrative appeals pertaining to N-400 applications.

3)  In regard to items 15 and 16, those requests were referred to the DHS Ombudsman's Office or the DHS Office of Inspector General, for a response direct to Plaintiffs, as those items of their request sought records created by those components of DHS, not USCIS.

4)  In regard to item 17, the NRC did not locate any responsive records.

5)  In regard to item 19, contrary to the assertion in item 19, USCIS has not changed its mission, which is to administer the nation's lawful immigration benefits system.

*See* Eggleston Decl., ¶ 26, and Attach. F (ECF 57-7).

Defendant provided Plaintiffs two compact discs of responsive records along with the second response letter. *Id*., ¶ 27. One disc contained 18 Excel format spreadsheets, and the other disc contained the 624 pages of material referenced above, saved in .pdf file format. *Id*. The disc containing the 18 Excel spreadsheets denoted which of the 20

10

specific item(s) of Plaintiffs' FOIA request each spreadsheet is responsive to. *Id*. The disc containing the 624 pages of records included seven .pdf files. *Id*., ¶ 28. Each .pdf filename ends with a unique number, e.g. 8, 10, 12, 14, etc., which indicates which of the 20 FOIA request item(s) that the file is responsive to. *Id*.

Defendant released 450 pages in their entirety and 174 in part. *Id*., ¶ 29. Only three of the 18 Excel spreadsheets contain limited redacted material, the rest were released in their entirety to Plaintiffs. *Id*. The NRC determined to release all information from the responsive records except the portions that are appropriately exempt pursuant to 5 U.S.C. § 552 (b)(5), (b)(6) and (b)(7)(C) of FOIA. *Id*. The records containing partially redacted material contain box "outlines" showing the location of the redacted material and each record that contains some redacted material also contains the specific FOIA exemption citation that supports withholding the material. *Id*. However, no record is redacted in full. *Id*.

H.   Segregability Analysis

NRC FOIA staff carefully conducted a line-by-line review of the responsive records, segregated all non-exempt material and released all reasonably segregable, non-exempt information to Plaintiffs. *See* Eggleston Decl., ¶ 29. Any further segregation and release of the redacted material would entail releasing information that is appropriately exempt from FOIA production. *Id*.

Thus, Defendant's records searches in this case were reasonably calculated to locate records responsive to Plaintiffs' FOIA request, all files and agency offices likely to contain responsive material were searched, and USCIS has no reason to believe that additional responsive records exist that are within USCIS custody and control. *See* Eggleston Decl., ¶ 30.

\\\

\\\

\\\

\\\

11

G.    *Vaughn* Index

As set forth in Defendant's *Vaughn* index,[3] the limited withholdings in this case are justified based on the FOIA exemptions that Defendant applied to the records it produced to Plaintiffs and that remain in dispute in this litigation. *See* Eggleston Decl., ¶ 31, and Attach. G [*Vaughn* index] (ECF 57-8). The *Vaughn* index describes the records, how they were segregated, and the justification for the FOIA exemptions USCIS applied to the records. *Id*.

## III.    STANDARD OF REVIEW IN FOIA CASES

The United States can only be sued to the extent that it has waived its sovereign immunity. *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987). The waiver of sovereign immunity under the FOIA gives the Court jurisdiction to enjoin an agency from withholding agency records improperly withheld and to order the production of any agency records improperly withheld from a plaintiff. 5 U.S.C. § 552(a)(4)(B); *Spurlock v. FBI*, 69 F.3d 1010, 1015 (9th Cir. 1995). Federal jurisdiction to order disclosure is dependent on a showing that an agency has (1) "improperly" (2) "withheld" (3) "agency records." *Spurlock*, 69 F.3d at 1015 (*quoting Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 150, 100 S. Ct. 960, 968, 63 L. Ed. 2d 267 (1980)). "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *Id.* (*quoting Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142, 109 S. Ct. 2841, 2846-47, 106 L. Ed. 2d 112 (1989)). Thus, the Court only has jurisdiction over agency records or documents that are improperly withheld.

Under FOIA, an agency's decision to withhold information from a FOIA requester is subject to *de novo* review. 5 U.S.C. § 552(a)(4)(B). The agency bears the burden of

---

[3] Where the adequacy of the agency's search is at issue, the agency relies upon declarations. These declarations or affidavits (singly or collectively) are often referred to as a *Vaughn* index, after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 415 U.S. 977, 94 S.Ct. 1564 (1974). *See also, Wiener v. FBI*, 943 F.2d 972 at 978, n.6 (9th Cir. 1991), *cert. denied*, 505 U.S. 1212 (1992) ("[w]e refer to these affidavits [of FBI agents and CIA officers] collectively as the *Vaughn* index").

justifying the nondisclosure of documents and establishing that particular documents are exempt from disclosure. *Lane v. Dept. of Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008); *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995). To meet its burden, the agency may rely on affidavits or declarations and other evidence which show that the documents are exempt from disclosure. *Lane*, 523 F.3d at 1135-36. Summary judgment may be granted solely on the basis of agency affidavits or declarations if they contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption. *See Lane*, 523 F.3d at 1136 (*citing Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987) ("district court need look no further").

FOIA cases are typically decided on motions for summary judgment because facts are rarely in dispute. *See Yonemoto v. Department of Veterans Affairs*, 686 F.3d 681, 688 (9th Cir. 2012); *Lane*, 523 F.3d at 1134. A defendant is entitled to summary judgment in a FOIA case when it demonstrates that no material facts are in dispute, that it has conducted an adequate search for responsive records, and that each responsive record that it has located has either been produced or is exempt from disclosure. *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980); *see also Zemansky v. U.S. EPA*, 767 F.2d 569, 571 (9th Cir. 1985); *Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 150 (1980).

## IV.   ARGUMENT

### A.   Defendant Conducted Reasonable Search for Records

Under the FOIA, an agency is obligated to conduct a search that is "'reasonably calculated to uncover all relevant documents.'" *ACLU of Southern Cal. v. DHS*, 2012 WL 5342411, at *1 (C.D. Cal. Oct. 25, 2012) (*quoting Lane*, 523 F.3d at1139); *see also, Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). A reasonable search is one that covers those locations where responsive records are likely to be located. *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To satisfy its obligation, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the

1   information requested." *Id.*; s*ee also, ACLU of Southern Cal.*, 2012 WL 5342411, at *1.

2   A search is not inadequate merely because it failed to "uncover[] every document

3   extant." *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see Lane*,

4   523 F.3d at 1139 (noting that in FOIA cases, "the government need not show that it

5   produced every responsive document"). A search is inadequate only if the agency fails to

6   "show, with reasonable detail, that the search method . . . was reasonably calculated to

7   uncover all relevant documents." *Ogelsby*, 920 F.2d at 68; *see Lane*, 523 F.3d at 1139

8   (holding that the government's search "need only be reasonable"). Accordingly, for a

9   court evaluating an agency's search, the fundamental question is "whether the search for

10  those documents was adequate," not "whether there might exist any other documents

11  responsive to the request." *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir.

12  1994); *see Weisberg*, 705 F.2d at 1351 (determining that "the issue is not whether any

13  further documents might conceivably exist but rather whether the government's search

14  for responsive documents was adequate") (citation omitted).

15  The agency bears the burden of demonstrating the adequacy of the search by

16  providing a declaration that contains "reasonably detailed descriptions of the documents

17  and allege facts sufficient to establish an exemption." *Lane*, 523 F.3d at 1139; *Clay v.*

18  *Dep't of Justice*, 680 F. Supp. 2d 239, 245 (D.D.C. 2010) (*quoting Ogelsby*, 920 F.2d at

19  68) (finding such affidavits should set forth the search terms and type of search

20  performed, and aver that all files likely to contain responsive materials were searched);

21  *In Def. of Animals v. NIH*, 543 F. Supp. 2d 83, 98 (D.D.C. 2008) ("To meet its burden,

22  the agency may submit affidavits or declarations that explain both in reasonable detail

23  and in a non-conclusory fashion the scope and method of the agency's search.").

24  "Agency affidavits are accorded a presumption of good faith which cannot be rebutted

25  by purely speculative claims about the existence and discoverability of other

26  documents." *SafeCard Servs.*, 926 F.2d at 1200 (quotations omitted). Once an agency

27  has met its burden to demonstrate the adequacy of its search, the agency's position can

28  be rebutted "only by showing that the agency's search was not made in good faith."

14

1   *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993). Speculative or hypothetical

2   assertions are insufficient to raise a material question of fact with respect to the adequacy

3   of an agency's search. *Ogelsby*, 920 F.2d at 67 n. 13.

4         Here, Plaintiffs' FOIA request was complex, seeking access to 20 different

5   categories of records that pertained to USCIS processing of N-400 (naturalization)

6   applications over a nearly three year period. As set forth above, Defendant conducted

7   two separate searches, repeatedly consulted with Plaintiffs' counsel and used the search

8   terms provided by Plaintiffs. Initially, the FOIA staff initially identified seven offices to

9   be searched, provided specific written instructions to each program offices, identified the

10   specific item(s) of Plaintiffs' FOIA request that the program office should respond to,

11   and provided detailed search terms to be utilized for each item of the request. *See*

12   Eggleston Decl., ¶¶ 10-14. In addition, the FOIA staff identified the types of documents

13   to search for and the specific databases to be searched. *Id*., ¶ 13. Defendant also provided

14   additional written and verbal guidance to the program officers, in order to assist them in

15   conducting a second search for records, including searches of their databases, email

16   archives, and hardcopy file records. *Id*., ¶¶ 23-25. Databases searched included ELIS,

17   CLAIMS 4, and agency computer storage drives that may contain relevant Excel

18   spreadsheets, Microsoft Word documents such as letters and memoranda, PowerPoint

19   presentation slides, and .pdf files that may contain relevant manuals and guidance for

20   processing N-400 applications. *Id*., ¶ 24.

21         Thus, as demonstrated by the Eggleston Declaration, Defendant has met its burden

22   to perform an adequate search for responsive records in this case.

23       **B.**    **Defendant Properly Withheld Documents Under Exemption 5**

24         As set forth above, Defendant made two separate releases of records to Plaintiffs,

25   producing a total of 1,126 pages of responsive records and 18 voluminous Excel

26   spreadsheets in response to their FOIA request. The vast majority of records disclosed to

27   Plaintiffs in this case were released in their entirety. Only 174 pages were produced in

28   part, and minor portions of only three of the Excel spreadsheets were exempt from

15

1  disclosure in this FOIA case. Fifteen of the responsive Excel spreadsheets were disclosed
2  to Plaintiffs in full.

3       Defendant carefully reviewed the responsive records compiled in this case and
4  released all information except the portions that are appropriately exempt pursuant to 5
5  U.S.C. § 552(b)(5)("Exemption 5"); (b)(6)("Exemption 6"); and (b)(7)(C)("Exemption
6  7(C)") of the FOIA. *See* Eggleston Decl., ¶¶ 17, 26, and Attachs. D, F. After a careful,
7  line-by-line review, Defendant appropriately segregated all non-exempt material and
8  disclosed it to Plaintiffs. The few records that are partially redacted are, for the reasons
9  stated below, exempt from FOIA disclosure. It remains unclear whether Plaintiffs intend
10  to challenge the withholdings in this case.

**1.    Exemption 5 – Inter-Agency or Intra-Agency Memorandums**

11
12       Exemption 5 to the FOIA exempts from disclosure "inter-agency or intra-agency
13  memorandums or letters which would not be available by law to a party other than an
14  agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption applies to
15  documents that are normally privileged in the civil litigation context. Consequently,
16  Exemption 5 permits the withholding of all or portions of any documents that are subject
17  to the deliberative process privilege or the work-product doctrine, among others.

18       In this case, certain documents were withheld under the deliberative process
19  privilege. The deliberative process privilege protects the internal deliberations of an
20  agency by exempting from release recommendations, analyses, opinions, advisory
21  guidance, and other non-factual information prepared as part of an agency decision-
22  making process. The purpose of the deliberative process privilege is to prevent injury to
23  the quality of agency decisions. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151
24  (1975). Thus, pre-decisional material comprising and reflecting internal deliberation may
25  properly be withheld as release would have a chilling effect on producing quality
26  decisions because agency personnel would be less candid in developing and sharing such
27  opinions, recommendations or viewpoints.
28  \\\

Here, for example, Defendant properly withheld the material from an Executive Summary that summarized the proposed fee schedule rule change and the agency's reasons for proposing immigration fee adjustments in 2016, pursuant to Exemption 5. *See Vaughn* index (ECF 57-8), at 8. In that case, the USCIS Fee Schedule Proposed Rule that resulted from the 2016 fee study was published in the Federal Register on May 4, 2019. Thus, the withheld material reflected pre-decisional internal agency deliberations regarding a rule change. *Id*., at 9. The release of such information would tend to have a chilling effect on the ability and willingness of agency officials to freely deliberate and concur or non-concur with proposed agency policy changes. *Id*. Similarly, Defendant withheld portions of emails, briefing and background materials prepared for the USCIS Director regarding a Congressional hearing, and PowerPoint slides based on Exemption 5's deliberative process privilege. *Id*., at 13-14. The release of such information would reveal sensitive internal agency information about proposed plans to address the USCIS backlog, reasons for the backlog, and possible solutions, including proposals for budgetary outlays to specific programs to address the backlog. *Id*. Moreover, such information is pre-decisional, was prepared in anticipation of critical Congressional testimony and illustrates the internal "give-and-take" deliberations between senior management at USCIS. *Id*. Release of this information would have a chilling effect on management's ability to freely discuss, deliberate and make important decisions. *Id*.

## 2. Exemption 6 & 7(c) – Unwarranted Invasion of Personal Privacy

Exemption (b)(6) applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The phrase "similar files" "has a broad, rather than a narrow meaning" and includes records containing information about individuals. *Forest Service Empls. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024 (9th Cir. 2008) (quotation omitted). Exemption 7(c) provides somewhat broader protection, exempting from release information in law enforcement records that, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

17

5 U.S.C. § 552(b)(7)(C). The agency must first establish that the document has a law enforcement purpose, a standard that is easily met here, as described above. *See infra; Rosenfeld v. Dep't of Justic*e, 57 F.3d 803, 808 (9th Cir. 1995).

Once the threshold requirement is satisfied, similar to Exemption 6, the court must "balance the privacy interest protected by the exemption[] against the public interest in government openness that would be served by disclosure." *Lahr v. National Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009). While both Exemption 6 and Exemption 7(c) require this balancing, Exemption 7(c)'s privacy protection is stronger, and the exemptions differ in the "magnitude of the public interest" that must be shown to overcome the protected privacy interests. *Id*. "Personal privacy interests" under Exemption 7(c) encompass a "broad range of concerns" relating to an individual's control of personal information and "interest in keeping personal facts away from the public eye. *Id*. Also, similar to Exemption 6, "[o]nce the government has identified a cognizable privacy interest, the only relevant public interest . . . is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id*. (quotation omitted).

Here, the information withheld under Exemption 6 and/or 7(c) includes references to "Inquiry Numbers" pertaining to specific individual N-400 applicants who were the subject of the Congressional inquiry, and is linked to individual A-files. *See Vaughn* index (ECF 57-8), at 4-5. These individuals have a strong privacy interest in not having such references released in the public domain. The inquiry numbers withheld is linked to and traceable directly to an N-400 applicant. *Id*. This is personal identifying information that is appropriately exempt pursuant to Exemption 6. *Id*. The disclosure of such information could reasonably be expected to constitute an unwarranted invasion of personal privacy and/or subject these individuals to harassment, and Plaintiffs have identified no public interest outweighing these interests. *Id*. Moreover, Plaintiffs in this case agreed that Defendant would not be required to produce any records that pertain to

18

any specific individual N-400 application. *Id.*; *see also*, July 5, 2019 Joint Supplemental

Rule 26(f) Report (ECF 23). Similar redactions are made to the PowerPoint training

slides that contain examples of ELIS data that contains sample N-400 records that are

found in the ELIS database. *See Vaughn* index (ECF 57-8), at 7. The slides include

names, dates of birth, country of birth, addresses, receipt numbers, and alien numbers of

N-400 applicants. *Id.*

## V.   **CONCLUSION**

For the reasons stated above, Defendant respectfully requests that summary

judgment be entered in its favor. Defendant has conducted an adequate search for the

requested records, has properly asserted appropriate exemptions, provided a sufficiently

detailed *Vaughn* index justifying the agency's withholdings and properly concluded that

no information was segregable. Accordingly, there is no material factual dispute, and

Defendant is entitled to summary judgment in this matter.

Dated:  December 18, 2020

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section, Civil Division

*/s/ Alarice M. Medrano*

ALARICE M. MEDRANO
Assistant United States Attorney

Attorneys for Defendant, United States
Citizenship and Immigration Services,
Department of Homeland Security