NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section, Civil Division
ALARICE M. MEDRANO (Cal. Bar No. 166730)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-0460
     Facsimile: (213) 894-7819
     E-mail: Alarice.Medrano@usdoj.gov

Attorneys for Defendant, United States Citizenship and
Immigration Services, Department of Homeland Security

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *ET AL*., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | No. CV 18-08034 GW (MRWx) <br><br> <u>Motion Hearing</u> <br> Date: February 18, 2021 <br> Time: 8:30 a.m. <br> Ctrm: First Street Courthouse <br>      350 W. 1st Street <br>      Ctrm. #9D, 9th Floor <br>      Los Angeles, CA 90012 <br><br> Honorable George H. Wu <br> United States District Judge |

## DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

1

Pursuant to Fed. R. Civ. P. Rule 56 and Local Rule 56-1, Defendant United States Citizenship and Immigration Services ("USCIS"), Department of Homeland Security ("DHS") submits this Statement of Uncontroverted Facts and Conclusions of Law. Defendant's Motion for Summary Judgment, came on regularly for hearing on February 18, 2021, before the Honorable George H. Wu, United States District Judge, in Courtroom 9D of the First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012.

The Court having considered the parties' filings, evidence presented, memorandum of points and authorities, and oral argument at the hearing, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

| UNCONTROVERTED FACTS | SUPPORTING EVIDENCE |
|---|---|
| 1. Plaintiffs' FOIA request was mailed to the National Records Center ("NRC") in a letter dated August 6, 2018. | Declaration of Jill A. Eggleston ("Eggleston Decl.") (ECF 57), at ¶ 7, fn. 7; Attach. A (ECF 57-2). |
| 2. Plaintiffs' FOIA request was not received by the NRC FOIA division and scanned into the NRC FOIA processing system and database until September 12, 2018. | *Id.* |
| 3. On September 19, 2018, USCIS issued an acknowledgement letter to Plaintiffs, confirming receipt of the FOIA request and informing Plaintiffs that the request was assigned to USCIS's complex FOIA | *Id.*, ¶¶ 8-9, and Attach. B (ECF 57-3). |

| | |
|---|---|
| processing track (Track II). | |
| 4. In the September 19, 2018 letter, USCIS invoked its right to additional processing time pursuant to 5 U.S.C. § 552(a)(6)(B). | *Id.* |
| 5. In the September 19, 2018 letter, USCIS invited Plaintiffs to narrow their FOIA request in order to be eligible for placement in a faster FOIA processing track. | *Id.* |
| 6. The NRC FOIA staff determined that numerous USCIS program offices might have responsive records and requested that the following offices conduct a search of their records systems and databases: Executive Secretariat ("EXSO"); Field Office Directorate ("FOD"); Office of Chief Financial Officer ("OCFO"); Office of Policy and Strategy ("OP&S"); Office of Legislative Affairs; Administrative Appeals Office ("AAO"); and The Office of Information Technology ("OIT"). | Eggleston Decl., ¶¶ 10-12. |
| 7. The NRC FOIA staff provided specific written instructions to each | *Id.*, ¶ 13, and Attach. C (ECF 57-4). |

3

| | |
|---|---|
| of the agency program offices, in regard to Plaintiffs' FOIA request. | |
| 8. The NRC FOIA staff provided each of the agency program offices a search time frame of January 1, 2016, to October 10, 2018, for Plaintiffs' FOIA request. | *Id.* |
| 9. The NRC FOIA staff identified the specific item(s) of Plaintiffs' FOIA request that each program office should respond to, in regard to Plaintiffs' FOIA request. | *Id.* |
| 10. The NRC FOIA staff provided each of the agency program offices detailed search terms to be utilized for each item of the Plaintiff's FOIA request. | *Id.* |
| 11. The NRC FOIA staff identified the types of documents to search for in response to Plaintiff's FOIA request. | *Id.* |
| 12. The NRC FOIA staff identified the databases to be searched in response to Plaintiff's FOIA request, including the Electronic Immigration System ("ELIS")(a computerized USCIS immigration | |

| | |
|---|---|
| application filing system, including N-400 naturalization applications, available for use by the public), agency email, electronic records consisting of PowerPoint training slides, Excel spreadsheets, and hardcopy documents maintained by the program offices. | |
| 13. The program offices compiled over 133 GB of potentially responsive records that were forwarded to the NRC for review. | *Id.*, ¶ 14. |
| 14. The NRC and USCIS program offices determined that Plaintiffs' FOIA request was overly broad and burdensome. | *Id.* |
| 15. The parties met and conferred on February 21, 2019, to discuss narrowing the scope of Plaintiffs' FOIA request. | Eggleston Decl., ¶ 15 |
| 16. On March 12, 2019, Defendant outlined the various issues regarding Plaintiffs' FOIA request in an email to Plaintiffs. | *Id.* |
| 17. Plaintiffs' counsel acknowledged receipt of the email but did not respond further. | *Id.*; *see also*, Supplemental Rule 26(f) Report, (ECF 18), and Ex. B (ECF 18-2) |

| | |
|---|---|
| 18. On June 28, 2019, Defendant made its first production of responsive records to Plaintiffs, which consisted of 502 pages of USCIS PowerPoint slides that were disclosed in full, with no material withheld pursuant to any FOIA exemptions. | Eggleston Decl., ¶¶ 16-17, and Attach. D (ECF 57-5). |
| 19. The PowerPoint slides included material regarding the transition of N-400 (naturalization) processing to the electronic USCIS ELIS platform and moving away from paper N-400 adjudications. | *Id.* |
| 20. The records included statistics about the number of electronically filed N-400 applications received by USCIS. | *Id.* |
| 21. Defendant informed Plaintiffs that it continued to review and process responsive records. | *Id.* |
| 22. Defendant informed Plaintiffs that item 15 seeking records from the DHS Ombudsman Office had been referred to DHS, as this item sought records created by an agency other than USCIS. | *Id.* |

| | |
|---|---|
| 23. Defendant informed Plaintiffs that item 16 seeking records from the DHS Office of Inspector General had been referred to DHS, as this item sought records created by an agency other than USCIS. | *Id.* |
| 24. The letter again invited Plaintiffs to discuss narrowing the scope of their request. | *Id.* |
| 25.  On July 3, 2019, the parties met and conferred a second time in an attempt to further narrow the scope of the search and the records that Plaintiffs sought. | Eggleston Decl., ¶ 18. |
| 26. USCIS informed Plaintiffs that it was reviewing over 133 GB of potentially responsive records and that it could take many more months to complete that review and process any responsive records. | *Id.* |
| 27. The parties reached agreement to narrow the records search regarding certain items of Plaintiffs' request. | Eggleston Decl., ¶ 19; July 5, 2019 Supplemental Joint Rule 26(f) Report (ECF 23) (setting forth the parties' search agreement and relative positions regarding each of the twenty items of Plaintiffs' FOIA request). |
| 28. The parties agreed that USCIS will | *Id.* |

| | |
|---|---|
| not be required to search Alien file ("A-file") records or produce records that pertain to any specific individual N-400 application. | |
| 29. The parties agreed that there are no responsive records for item 4 of the request because Congress allocates no funding to USCIS for adjudication of N-400s. | *Id.* |
| 30. The parties agreed to limit the search for any responsive emails to those sent by senior agency management officials rather than rank and file employees. | *Id.* |
| 31. The parties reached agreement regarding offices and records custodians that should be searched specific to items of Plaintiffs' request. | *Id.* |
| 32. On July 11, 2019, the Court held a status conference and directed that the parties file another status report on September 10, 2019. | Eggleston Decl., ¶ 20; July 11, 2019 Status Conference Order (ECF 24). |
| 33. On September 10, 2019, the parties filed another Supplemental Rule 26(f) Report, updating the Court on the status of the parties' | Eggleston Decl., ¶ 21; September 10, 2019 Supplemental Rule 26(f) (ECF 25). |

| | |
|---|---|
| negotiations to narrow the scope of the request and the records search. | |
| 34. Based on its review of the records compiled at that point, Defendant determined an additional, targeted search of FOD, OCFO, Office of Performance and Quality ("OPQ"), OLA, AAO, Office of Investigations ("OI"), OIT, and the ELIS database was necessary. | *Id.* |
| 35.  The FOIA staff continued processing documents but determined that the documents were not sufficiently responsive to Plaintiffs' request. | *Id.* |
| 36. The Court held a status conference on September 12, 2019, and after considering the parties' respective positions, ordered that USCIS to complete its "amassment of the applicable records" by November 15, 2019, and make its final records production to Plaintiffs by December 13, 2019. | Eggleston Decl., ¶ 22; September 12, 2019 Status Conference Order (ECF 26). |
| 37. On September 16, 2019, the NRC began a second search for records responsive to Plaintiffs' FOIA | Eggleston Decl., ¶¶ 23-24, and Attach. E [NRC Supplemental Staffing Spreadsheet] (ECF 57-6). |

| | |
|---|---|
| request. | |
| 38. The NRC FOIA staff provided the USCIS program offices, including FOD, OCFO, OPQ, OLA, AAO, OI, and OIT with additional written and verbal guidance to conduct another search for records responsive to specific items in Plaintiffs' FOIA request. | *Id.* |
| 39. The program offices conducted a further search of their databases, email archives, and hardcopy file records and forwarded potentially responsive records to the NRC for review and processing. | *Id.*, ¶¶ 23-25. |
| 40. Databases searched included ELIS, CLAIMS 4, and agency computer storage drives that may contain relevant Excel spreadsheets, Microsoft Word documents such as letters and memoranda, PowerPoint presentation slides, and .pdf files that may contain relevant manuals and guidance for processing N-400 applications. | *Id.*, ¶ 24. |
| 41. NRC FOIA staff reviewed the records compilation and determined | *See* Eggleston Decl., ¶ 26. |

| | |
|---|---|
| that 624 pages of records and 18 Excel spreadsheets were responsive to the request. | |
| 42. Defendant determined there were no responsive records located for item 6 of Plaintiffs' FIOA request. | *Id*. |
| 43. Defendant determined there were no responsive records located for item 7 of Plaintiffs' FOIA request. | |
| 44. Defendant determined there were no responsive records located for item 13 of Plaintiffs' FOIA request. | |
| 45. Defendant determined there were no responsive records located for item 17 of Plaintiffs' FOIA request. | |
| 46. Defendant determined there were no responsive records located for item 19 of Plaintiffs' FOIA request. | |
| 47. On December 13, 2019, the NRC sent a second FOIA response to Plaintiffs. | Eggleston Decl., ¶ 26, and Attach. F (ECF 57-7). |
| 48. Defendant's second FOIA response informed Plaintiffs that in regard to items 6 and 7 of Plaintiffs' FOIA request, no records exist. | *Id.* |
| 49. Defendant's second FOIA response informed Plaintiffs that in regard to | *Id.* |

| | |
|---|---|
| item 13, AAO does not have any appellate jurisdiction over N-400 applications. As a result, AAO is unable to produce or provide a report on USCIS administrative appeals pertaining to N-400 applications. | |
| 50. Defendant's second FOIA response informed Plaintiffs that item15 was referred to the DHS Ombudsman's Office for a response direct to Plaintiffs, as that items of the request sought records created by another component of DHS, not USCIS. | *Id.* |
| 51. Defendant's second FOIA response informed Plaintiffs that item 16 was referred to the DHS Office of Inspector General, for a response direct to Plaintiffs, as that items of the request sought records created by another component of DHS, not USCIS. | *Id.* |
| 52. Defendant's second FOIA response informed Plaintiffs that in regard to item 17, the NRC did not locate any responsive records. | *Id.* |

| | |
|---|---|
| 53. Defendant's second FOIA response informed Plaintiffs that in regard to item 19, USCIS has not changed its mission, which is to administer the nation's lawful immigration benefits system. | *Id.* |
| 54. Defendant provided Plaintiffs two compact discs of responsive records along with the second response letter. | *Id.*, ¶ 27. |
| 55. One disc contained 18 Excel format spreadsheets. | *Id.* |
| 56. The disc containing the 18 Excel spreadsheets denoted which of the 20 specific item(s) of Plaintiffs' FOIA request each spreadsheet is responsive to. | *Id.* |
| 57. Only three of the 18 Excel spreadsheets contain limited redacted material, the rest were released in their entirety to Plaintiffs. | *Id.*, ¶ 29 |
| 58. The other disc contained 624 pages of material referenced above, saved in .pdf file format. | *Id.*, ¶ 27 |
| 59. The disc containing the 624 pages of records included seven .pdf files. | *Id.*, ¶ 28. |

13

| | |
|---|---|
| 60. Each .pdf filename ends with a unique number, e.g. 8, 10, 12, 14, etc., which indicates which of the 20 FOIA request item(s) that the file is responsive to. | *Id.* |
| 61. With the second FOIA response letter, Defendant released 450 pages in their entirety and 174 in part. | *Id.*, ¶ 29 |
| 62. With the second FOIA response letter, the NRC determined to release all information from the responsive records except the portions that are appropriately exempt pursuant to 5 U.S.C. § 552 (b)(5), (b)(6) and (b)(7)(C) of FOIA. | *Id.* |
| 63. In regard to the records released in Defendant's second FOIA response, any partially redacted material contains a box "outline" showing the location of the redacted material and a reference to the specific FOIA exemption citation that supports withholding the material. | *Id.* |
| 64. In regard to the records released in Defendant's second FOIA response, no record is redacted in full. | *Id.* |

14

| | |
|---|---|
| 65. NRC FOIA staff carefully conducted a line-by-line review of the responsive records, segregated all non-exempt material and released all reasonably segregable, non-exempt information to Plaintiffs. | Eggleston Decl., ¶ 29. |
| 66. Any further segregation and release of the redacted material in this case would entail releasing information that is appropriately exempt from FOIA production. | *Id.* |
| 67. Defendant's records searches in this case were reasonably calculated to locate records responsive to Plaintiffs' FOIA request. | Eggleston Decl., ¶ 30. |
| 68. All files and agency offices likely to contain responsive material were searched in this case. | *Id.* |
| 69. USCIS has no reason to believe that additional responsive records exist that are within USCIS custody and control. | *Id.* |
| 70. The *Vaughn* index describes the records, how they were segregated, and the justification for the FOIA exemptions applied to the records. | Eggleston Decl., ¶ 31, and Attach. G [*Vaughn* index] (ECF 57-8). |

| | |
|---|---|
| 71. The limited withholdings in this case for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" are justified based on the FOIA exemption 5 that Defendant applied to the records. | *Id.*; *see also*, 5 U.S.C. § 552(b)(5) ("Exemption 5") |
| 72. The limited withholdings in this case for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" are justified based on the FOIA exemption 6 that Defendant applied to the records. | *Id.*; *see also*, 5 U.S.C. § 552(b)(6) ("Exemption 6") |
| 73. The limited withholdings in this case for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" are justified based on the FOIA exemption 7(c) that Defendant applied to the records. | *Id.*; *see also*, 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)") |

1      Any Conclusion of Law deemed to be a Finding of Fact is hereby incorporated

2   into these Findings of Fact.

3      Based on the foregoing Undisputed Facts, the Court now makes its:

4                            **CONCLUSIONS OF LAW**

5   **III.   STANDARD OF REVIEW IN FOIA CASES**

6      The United States can only be sued to the extent that it has waived its sovereign

7   immunity. *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987). The waiver of

8   sovereign immunity under the FOIA gives the Court jurisdiction to enjoin an agency

9   from withholding agency records improperly withheld and to order the production of any

10  agency records improperly withheld from a plaintiff. 5 U.S.C. § 552(a)(4)(B); *Spurlock*

11  *v. FBI*, 69 F.3d 1010, 1015 (9th Cir. 1995). Federal jurisdiction to order disclosure is

12  dependent on a showing that an agency has (1) "improperly" (2) "withheld" (3) "agency

13  records." *Spurlock*, 69 F.3d at 1015 (*quoting Kissinger v. Reporters Comm. for Freedom*

14  *of Press*, 445 U.S. 136, 150, 100 S. Ct. 960, 968, 63 L. Ed. 2d 267 (1980)). "Unless each

15  of these criteria is met, a district court lacks jurisdiction to devise remedies to force an

16  agency to comply with the FOIA's disclosure requirements." *Id.* (*quoting Dep't of*

17  *Justice v. Tax Analysts*, 492 U.S. 136, 142, 109 S. Ct. 2841, 2846-47, 106 L. Ed. 2d 112

18  (1989)). Thus, the Court only has jurisdiction over agency records or documents that are

19  improperly withheld.

20     Under FOIA, an agency's decision to withhold information from a FOIA requester

21  is subject to *de novo* review. 5 U.S.C. § 552(a)(4)(B). The agency bears the burden of

22  justifying the nondisclosure of documents and establishing that particular documents are

23  exempt from disclosure. *Lane v. Dept. of Interior*, 523 F.3d 1128, 1135-36 (9th Cir.

24  2008); *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995).

25  To meet its burden, the agency may rely on affidavits or declarations and other evidence

26  which show that the documents are exempt from disclosure. *Lane*, 523 F.3d at 1135-36.

27  Summary judgment may be granted solely on the basis of agency affidavits or

28  declarations if they contain reasonably detailed descriptions of the documents and allege

1   facts sufficient to establish an exemption. *See Lane*, 523 F.3d at 1136 (*citing Lewis v.*
2   *IRS*, 823 F.2d 375, 378 (9th Cir. 1987) ("district court need look no further").

3         FOIA cases are typically decided on motions for summary judgment because facts
4   are rarely in dispute. *See Yonemoto v. Department of Veterans Affairs*, 686 F.3d 681, 688
5   (9th Cir. 2012); *Lane*, 523 F.3d at 1134. A defendant is entitled to summary judgment in
6   a FOIA case when it demonstrates that no material facts are in dispute, that it has
7   conducted an adequate search for responsive records, and that each responsive record
8   that it has located has either been produced or is exempt from disclosure. *Weisberg v.*
9   *U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980); *see also Zemansky v. U.S.*
10  *EPA*, 767 F.2d 569, 571 (9th Cir. 1985); *Kissinger v. Reporters Comm. for Freedom of*
11  *Press*, 445 U.S. 136, 150 (1980).

12  **IV.**   **ARGUMENT**

13      **A.**   **Defendant Conducted Reasonable Search for Records**

14        Under the FOIA, an agency is obligated to conduct a search that is "'reasonably
15  calculated to uncover all relevant documents.'" *ACLU of Southern Cal. v. DHS*, 2012
16  WL 5342411, at *1 (C.D. Cal. Oct. 25, 2012) (*quoting Lane*, 523 F.3d at1139); *see also,*
17  *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). A reasonable search
18  is one that covers those locations where responsive records are likely to be located.
19  *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To satisfy its obligation,
20  "the agency must show that it made a good faith effort to conduct a search for the
21  requested records, using methods which can be reasonably expected to produce the
22  information requested." *Id*.; s*ee also, ACLU of Southern Cal.*, 2012 WL 5342411, at *1.

23        A search is not inadequate merely because it failed to "uncover[] every document
24  extant." *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see Lane*,
25  523 F.3d at 1139 (noting that in FOIA cases, "the government need not show that it
26  produced every responsive document"). A search is inadequate only if the agency fails to
27  "show, with reasonable detail, that the search method . . . was reasonably calculated to
28  uncover all relevant documents." *Ogelsby*, 920 F.2d at 68; *see Lane*, 523 F.3d at 1139

(holding that the government's search "need only be reasonable"). Accordingly, for a court evaluating an agency's search, the fundamental question is "whether the search for those documents was adequate," not "whether there might exist any other documents responsive to the request." *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994); *see Weisberg*, 705 F.2d at 1351 (determining that "the issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate") (citation omitted).

The agency bears the burden of demonstrating the adequacy of the search by providing a declaration that contains "reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption." *Lane*, 523 F.3d at 1139; *Clay v. Dep't of Justice*, 680 F. Supp. 2d 239, 245 (D.D.C. 2010) (*quoting Ogelsby*, 920 F.2d at 68) (finding such affidavits should set forth the search terms and type of search performed, and aver that all files likely to contain responsive materials were searched); *In Def. of Animals v. NIH*, 543 F. Supp. 2d 83, 98 (D.D.C. 2008) ("To meet its burden, the agency may submit affidavits or declarations that explain both in reasonable detail and in a non-conclusory fashion the scope and method of the agency's search."). "Agency affidavits are accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1200 (quotations omitted). Once an agency has met its burden to demonstrate the adequacy of its search, the agency's position can be rebutted "only by showing that the agency's search was not made in good faith." *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993). Speculative or hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of an agency's search. *Ogelsby*, 920 F.2d at 67 n. 13.

Here, Plaintiffs' FOIA request was complex, seeking access to 20 different categories of records that pertained to USCIS processing of N-400 (naturalization) applications over a nearly three year period. As set forth above, Defendant conducted two separate searches, repeatedly consulted with Plaintiffs' counsel and used the search

terms provided by Plaintiffs. Initially, the FOIA staff initially identified seven offices to be searched, provided specific written instructions to each program offices, identified the specific item(s) of Plaintiffs' FOIA request that the program office should respond to, and provided detailed search terms to be utilized for each item of the request. *See* Eggleston Decl., ¶¶ 10-14. In addition, the FOIA staff identified the types of documents to search for and the specific databases to be searched. *Id*., ¶ 13. Defendant also provided additional written and verbal guidance to the program officers, in order to assist them in conducting a second search for records, including searches of their databases, email archives, and hardcopy file records. *Id*., ¶¶ 23-25. Databases searched included ELIS, CLAIMS 4, and agency computer storage drives that may contain relevant Excel spreadsheets, Microsoft Word documents such as letters and memoranda, PowerPoint presentation slides, and .pdf files that may contain relevant manuals and guidance for processing N-400 applications. *Id*., ¶ 24.

Thus, as demonstrated by the Eggleston Declaration, Defendant has met its burden to perform an adequate search for responsive records in this case.

## B.   Defendant Properly Withheld Documents Under Exemption 5

As set forth above, Defendant made two separate releases of records to Plaintiffs, producing a total of 1,126 pages of responsive records and 18 voluminous Excel spreadsheets in response to their FOIA request. The vast majority of records disclosed to Plaintiffs in this case were released in their entirety. Only 174 pages were produced in part, and minor portions of only three of the Excel spreadsheets were exempt from disclosure in this FOIA case. Fifteen of the responsive Excel spreadsheets were disclosed to Plaintiffs in full.

Defendant carefully reviewed the responsive records compiled in this case and released all information except the portions that are appropriately exempt pursuant to 5 U.S.C. § 552(b)(5)("Exemption 5"); (b)(6)("Exemption 6"); and (b)(7)(C)("Exemption 7(C)") of the FOIA. *See* Eggleston Decl., ¶¶ 17, 26, and Attachs. D, F. After a careful, line-by-line review, Defendant appropriately segregated all non-exempt material and

1   disclosed it to Plaintiffs. The few records that are partially redacted are, for the reasons

2   stated below, exempt from FOIA disclosure. It remains unclear whether Plaintiffs intend

3   to challenge the withholdings in this case.

4             **1.**    **<u>Exemption 5 – Inter-Agency or Intra-Agency Memorandums</u>**

5         Exemption 5 to the FOIA exempts from disclosure "inter-agency or intra-agency

6   memorandums or letters which would not be available by law to a party other than an

7   agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption applies to

8   documents that are normally privileged in the civil litigation context. Consequently,

9   Exemption 5 permits the withholding of all or portions of any documents that are subject

10  to the deliberative process privilege or the work-product doctrine, among others.

11        In this case, certain documents were withheld under the deliberative process

12  privilege. The deliberative process privilege protects the internal deliberations of an

13  agency by exempting from release recommendations, analyses, opinions, advisory

14  guidance, and other non-factual information prepared as part of an agency decision-

15  making process. The purpose of the deliberative process privilege is to prevent injury to

16  the quality of agency decisions. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151

17  (1975). Thus, pre-decisional material comprising and reflecting internal deliberation may

18  properly be withheld as release would have a chilling effect on producing quality

19  decisions because agency personnel would be less candid in developing and sharing such

20  opinions, recommendations or viewpoints.

21        Here, for example, Defendant properly withheld the material from an Executive

22  Summary that summarized the proposed fee schedule rule change and the agency's

23  reasons for proposing immigration fee adjustments in 2016, pursuant to Exemption 5.

24  *See Vaughn* index (ECF 57-8), at 8. In that case, the USCIS Fee Schedule Proposed Rule

25  that resulted from the 2016 fee study was published in the Federal Register on May 4,

26  2019. Thus, the withheld material reflected pre-decisional internal agency deliberations

27  regarding a rule change. *Id*., at 9. The release of such information would tend to have a

28  chilling effect on the ability and willingness of agency officials to freely deliberate and

concur or non-concur with proposed agency policy changes. *Id*. Similarly, Defendant withheld portions of emails, briefing and background materials prepared for the USCIS Director regarding a Congressional hearing, and PowerPoint slides based on Exemption 5's deliberative process privilege. *Id*., at 13-14. The release of such information would reveal sensitive internal agency information about proposed plans to address the USCIS backlog, reasons for the backlog, and possible solutions, including proposals for budgetary outlays to specific programs to address the backlog. *Id*. Moreover, such information is pre-decisional, was prepared in anticipation of critical Congressional testimony and illustrates the internal "give-and-take" deliberations between senior management at USCIS. *Id*. Release of this information would have a chilling effect on management's ability to freely discuss, deliberate and make important decisions. *Id*.

### 2.    Exemption 6 & 7(c) – Unwarranted Invasion of Personal Privacy

Exemption (b)(6) applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The phrase "similar files" "has a broad, rather than a narrow meaning" and includes records containing information about individuals. *Forest Service Empls. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024 (9th Cir. 2008) (quotation omitted). Exemption 7(c) provides somewhat broader protection, exempting from release information in law enforcement records that, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The agency must first establish that the document has a law enforcement purpose, a standard that is easily met here, as described above. *See infra; Rosenfeld v. Dep't of Justic*e, 57 F.3d 803, 808 (9th Cir. 1995).

Once the threshold requirement is satisfied, similar to Exemption 6, the court must "balance the privacy interest protected by the exemption[] against the public interest in government openness that would be served by disclosure." *Lahr v. National Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009). While both Exemption 6 and Exemption 7(c) require this balancing, Exemption 7(c)'s privacy protection is stronger, and the

exemptions differ in the "magnitude of the public interest" that must be shown to overcome the protected privacy interests. *Id.* "Personal privacy interests" under Exemption 7(c) encompass a "broad range of concerns" relating to an individual's control of personal information and "interest in keeping personal facts away from the public eye. *Id.* Also, similar to Exemption 6, "[o]nce the government has identified a cognizable privacy interest, the only relevant public interest . . . is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* (quotation omitted).

Here, the information withheld under Exemption 6 and/or 7(c) includes references to "Inquiry Numbers" pertaining to specific individual N-400 applicants who were the subject of the Congressional inquiry, and is linked to individual A-files. *See Vaughn* index (ECF 57-8), at 4-5. These individuals have a strong privacy interest in not having such references released in the public domain. The inquiry numbers withheld is linked to and traceable directly to an N-400 applicant. *Id.* This is personal identifying information that is appropriately exempt pursuant to Exemption 6. *Id.* The disclosure of such information could reasonably be expected to constitute an unwarranted invasion of personal privacy and/or subject these individuals to harassment, and Plaintiffs have identified no public interest outweighing these interests. *Id.* Moreover, Plaintiffs in this case agreed that Defendant would not be required to produce any records that pertain to any specific individual N-400 application. *Id.*; *see also*, July 5, 2019 Joint Supplemental Rule 26(f) Report (ECF 23). Similar redactions are made to the PowerPoint training slides that contain examples of ELIS data that contains sample N-400 records that are found in the ELIS database. *See Vaughn* index (ECF 57-8), at 7. The slides include names, dates of birth, country of birth, addresses, receipt numbers, and alien numbers of N-400 applicants. *Id.*

\\\

\\\

## V.   **CONCLUSION**

For the reasons stated above, Defendant respectfully requests that summary judgment be entered in its favor. Defendant has conducted an adequate search for the requested records, has properly asserted appropriate exemptions, provided a sufficiently detailed *Vaughn* index justifying the agency's withholdings and properly concluded that no information was segregable. Accordingly, there is no material factual dispute, and Defendant is entitled to summary judgment in this matter.

Dated: _____, 2021

_____
GEORGE H. WU
UNITED STATES DISTRICT JUDGE

Presented by:

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section, Civil Division

*/s/ Alarice M. Medrano*
_____
ALARICE M. MEDRANO
Assistant United States Attorney

Attorneys for Defendants, United States
Citizenship and Immigration Services,
Department of Homeland Security

24