PETER SCHEY (Cal. Bar No. 58232)
CARLOS HOLGUIN (Cal. Bar No. 90754)
CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
256 South Occidental Blvd.
Los Angeles, CA 90057
Telephone: (213) 388-8693, ext. 309
Facsimile: (213) 386-9484
email: pschey@centerforhumanrights.org
      crholguin@centerforhumanrights.org

*Attorney for Plaintiffs (listing continues on following page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| COALITION FOR HUMANE IMMIGRANT RIGHTS, *ET AL*., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendants. | Case No.  CV 18-08034 (MRWx) <br><br> PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT. <br><br> Date: May 20, 2021 8:30 AM <br><br> Honorable George H. Wu <br> United States District Judge |

1

*Plaintiffs' counsel continued:*

2

3
ERIN C. GANGITANO (CAL. BAR NO. 229824)

4
ASIAN PACIFIC ISLANDER LEGAL OUTREACH

1121 Mission St.

5
San Francisco, CA 94103

6
Telephone: (415) 567-6255

Facsimile: (415) 567-6248

7
email: ecgangitano@apilegaloutreach.org

8

9
LUIS A. PEREZ JIMENEZ (CAL. BAR NO. 319857)

10
CINTHIA NATALY FLORES (CAL. BAR NO. 304025)

COALITION FOR HUMANE IMMIGRANT RIGHTS

11
2533 W. Third St., Suite 101

12
Los Angeles, CA 90057

Telephone: (213) 353-1333

13
Facsimile: (213) 353-1344

14
email: lperez@chirla.org

cflores@chirla.org

15

16

17
*/ /*

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Opposition to Defendant's Motion for
Summary Judgment

ii

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................1

II.    PROCEDURAL Background ....................................................................1

III.   STANDARD OF REVIEW .......................................................................3
       A.  Purpose of FOIA and Governing Principles ....................................3
       B.  Legal Standard on Summary Judgment ............................................4

IV     ARGUMENT .............................................................................................5
       Request 1 ........................................................................................6
       Request 2 ........................................................................................8
       Request 3 ........................................................................................9
       Request 4 ........................................................................................9
       Request 5 ......................................................................................11
       Request 6 ......................................................................................11
       Request 7 ......................................................................................12
       Request 8 ......................................................................................14
       Request 9 ......................................................................................16
       Request 10 ....................................................................................16
       Request 11 ....................................................................................16
       Request 12 ....................................................................................17
       Request 13 ....................................................................................19
       Request 14 ....................................................................................19
       Request 15 ....................................................................................20
       Request 16 ....................................................................................21
       Request 17 ....................................................................................21
       Request 18 ....................................................................................22
       Request 19 ....................................................................................24
       Request 20 ....................................................................................24

V.     CONCLUSION ........................................................................................25

/ / /

Plaintiffs' Opposition to Defendant's Motion for
Summary Judgment

iii

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). ...............................................4

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)................................................................4

*Dept. of the Air Force v. Rose*, 425 U.S. 352, (1976), ...............................................3,4

*John Doe Agency v. John Doe Corp.,* 493 U.S. 146 (1989)..........................................3

*L.A. Times Commc'ns, LLC v. Army*, 442 F. Supp. 2d 880 (C.D. Cal. 2006)...........4, 5

*Lahr v. NTSB*, 569 F.3d 964 (9th Cir. 2009). ...............................................................5

*Maricopa Audubon Soc'y v. Forest Serv*., 108 F.3d 1089 (9th Cir. 1997) .................5

*Mead Data Central, Inc. v. Air Force*, 566 F.2d 242 (D.C. Cir. 1977).......................4

*Minier v. Central Intelligence Agency*, 88 F.3d 796 (9th Cir. 1996) ..........................15

*NLRB v. Robbins Tire & Rubber Co*., 437 U.S. 214, (1978). ......................................3

*Vild v. IRS*, 1996 U.S. Dist. LEXIS 3785, at *3 (D. Ariz. 1996). ...............................5

*Wiener v. FBI*, 943 F.2d 972 (9th Cir. 1991) ..............................................................15

*Zaldivar v. United States VA*, 2016 U.S. Dist. LEXIS 111490, at *9 (D. Ariz. Aug. 22, 2016) ...........................................................................................................................5

## STATUTES

5 U.S.C § 552(b)(5) ....................................................................................................19

5 U.S.C. § 552(a)(3)(A) ................................................................................................4

5 U.S.C. § 552(a)(4)(B) ................................................................................................4

5 U.S.C. § 552(a)(6)(A)(i) .............................................................................................4

5 U.S.C. § 552(b)(5) .............................................................................................19, 23

5 U.S.C. § 552(b)(6) ...................................................................................................23

## OTHER AUTHORITIES

8 CFR § 316 .................................................................................................................1

Rule 26(f) .....................................................................................................................2

Rule 56(c) of the Federal Rules of Civil Procedure .....................................................

Consolidated Appropriations Act, 2019 (Pub. L. 116-6) ............................................10

/ / /

Plaintiffs' Opposition to Defendant's Motion for
Summary Judgment

iv

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

I.       INTRODUCTION

The U.S. Immigration Citizenship and Immigration Services ("USCIS") receives and adjudicates N-400 applications for naturalization. 8 CFR § 316.

In August 2018, Plaintiffs submitted a Freedom of Information ("FOIA") request to Defendants seeking documents relating to delays in the adjudication of N-400 applications. ("Request Letter"). *See* Complaint at 5-8. [ECF #1.] Defendants failed to timely respond to this Request, forcing Plaintiffs to file this lawsuit. *Id*., at ¶ 17. Despite the importance of disclosure of the requested records so that the Plaintiff organizations can assess why there are delays and denials of naturalization applications, and make recommendations regarding the process, Defendants failed to release records until approximately a year later in June 2019 and December 2019, however without searching all locations requested or producing all documents sought that it may reasonably be believed are in their possession.

Defendant's Motion for Summary Judgment ("Defs' Motion") [EFC #64], establishes that they have neither conducted a reasonable search nor demonstrated that the information withheld from Plaintiffs is exempt from disclosure. Indeed, due to myriad deficiencies in the *Vaughn* Indices and accompanying declaration [ECF ## 57, 57-1], it is virtually impossible for the Court to perform the *de novo* review required at this stage, or for the Plaintiffs to meaningfully evaluate the adequacy of Defendant's search or claimed exemptions.

Plaintiffs therefore respectfully ask this Court to deny Defendant's Motion and to issue an Order directing the Defendants to conduct a further search to correct the deficiencies identified below and release all responsive records, submit revised affidavits and *Vaughn* Indices describing Defendant's search processes, and exemptions, and to perform an *in camera* review of certain documents for which an exemption to disclosure is claimed.

II.      PROCEDURAL BACKGROUND

As noted above, on August 6, 2018, the Plaintiffs submitted their FOIA Request Letter to Defendants pursuant to 5 U.S.C. § 552. [ECF #1]. The Request Letter

sought, *inter alia*, records regarding the volume of and reasons for N-400 Requests for Evidence ("RFEs") and Notices of Intent to Deny ("NOIDs"). The purpose of the Request was to gather information regarding the Government's costs, budget allocations for, and policies and practices relating to the adjudication of and delays in processing N-400 naturalization applications. Complaint at 1. [ECF #1].

Defendants did not answer the Complaint until December 11, 2018. [ECF #11.]

On February 7, 2019, the Parties filed a Joint Rule 26(f) Report. [ECF #16 at 3.] The Defendants had not yet produced any responsive documents and requested that the Parties further meet and confer to narrow the scope of FOIA request.[1]

On June 28, 2019, the Defendant made its first production of responsive records of approximately 500 largely irrelevant documents.

On July 5, 2019, the Parties filed a Supplemental Joint Rule 26(f). [ECF #232.] In this report, Plaintiffs acknowledge the receipt of the responsive documents but note that they were released without an index or any indication what documents respond to what requests. *Id*. at 3.[2]

The Defendant requested an open-ended extension for document production suggesting production pace of 500 documents per month until the request was completed. *Id*. at 5-6. The Plaintiffs did not agree to this request, as it could extend for months or even years.

The Parties did agree to narrow the location of the continuing document production to USCIS's Headquarters (including the Executive Secretariat, the Field Operations Directorate (FOD), Office of Performance and Quality Management

---

[1] "Defendant [stated it] has now identified a number of issues with the scope of the FOIA request, and needs additional time to confer with Plaintiffs' counsel about those issues. Defendant maintains that the resolution of this case is dependent upon Defendant's completion of the search and production of responsive records." Joint Rule 26(f) Report, February 7, 2019. [ECF #16, p. 3]

[2] As it turned out, these jumble of documents were entirely non-responsive to the requests in the Request Letter.  Plaintiffs urged that the search be completed in sixty days.  *Id*. at 4.

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment

2

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

(OPQ), emails of senior USCIS agency managers, USCIS Office of Legislative Affairs (OILA) ,USCIS Administrative Appeals Office (AAO) ), the National Benefits Center (NBC), and four USCIS Regional Offices. *Id*. at 6.[3]

On September 10, 2019, the Parties filed a Joint Status Report. [ECF #25.] Plaintiffs again commented on the length of time Defendants were taking to respond to the Request Letter. *Id*. at 1. Plaintiffs again requested that Defendants indicate what documents in the 500 pages released responded to particular requests in the Request Letter. *Id*. at 2-3. Plaintiffs further narrowed the content of USCIS responsive document production to Request 2 to "data in the form of summary agency reports reporting numbers of N-400 applications received, numbers of N-400 RFE's issued, numbers of N-400 NOIDS issued, and reports re: primary reasons RFE's are issued on N-400 applications." *Id*. at 4. The Report includes text describing Plaintiffs' agreement to limit numerous requests. *Id*. at 4-10.

III.   STANDARD OF REVIEW

**A. Purpose of FOIA and Governing Principles**

The U.S. Supreme Court "repeatedly has stressed the fundamental principle of public access to Government documents that animates the FOIA." *John Doe Agency v. John Doe Corp*., 493 U.S. 146, 151-152 (1989). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co*., 437 U.S. 214, 242 (1978).[4] The statute is designed "to pierce the veil of administrative secrecy and to open agency action to the

---

[3] The Parties also agreed to narrow the timeframe of documents to January 1, 2016, to October 2, 2018, and agreed that USCIS would not be required to search A-file records or produce records that pertain to any specific individual N-400 application. *Id*. Parties agreed to narrow any request regarding funding and fees to the fiscal years 2016, 2017, and 2018. *Id*.

[4] The FOIA's "basic purpose reflect[s] a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dept. of the Air Force v. Rose*, 425 U.S. 352, 360-361 (1976), *quoting* S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965).

light of public scrutiny." *Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quotation marks and citation omitted).[5]

Upon receipt of a FOIA request, a federal agency "shall make the records promptly available," 5 U.S.C. § 552(a)(3)(A), and "shall make reasonable efforts to search for the records" responsive to a request. 5 U.S.C. § 552(a)(3)(C)–(D).

Agencies must respond to FOIA requests within twenty business days of receipt, § 552(a)(6)(A)(i), and disclose responsive documents unless one or more of FOIA's exemptions apply.[6]

## B. Legal Standard on Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may enter summary judgment only if a review of the record shows there is "no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute is one in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted).

FOIA cases require *de novo* review of an agency's FOIA response. 5 U.S.C. § 552(a)(4)(B). The "typical standard for summary judgment is not sufficient in a FOIA proceeding," which instead "generally requires a two-stage inquiry." *L.A. Times Commc'ns, LLC v. Army*, 442 F. Supp. 2d 880, 893 (C.D. Cal. 2006) (quotation marks and citations omitted). First, the government must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Zaldivar v. United*

---

[5] "Without question, the Act is broadly conceived. It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *John Doe Agency*, 493 U.S. at 151–52 citation omitted).

[6] These exemptions are "narrowly construed." *Shannahan*, 672 F.3d at 1149; *Rose*, 425 U.S. at 361; *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). An agency bears the burden of establishing that an exemption applies. *Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009). "Any reasonably segregable portion of a record shall be provided" to the FOIA requester. 5 U.S.C. § 552(b).

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment

4

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

*States VA*, 2016 U.S. Dist. LEXIS 111490, at *9 (D. Ariz. Aug. 22, 2016) (citation omitted); *Lahr v. NTSB*, 569 F.3d 964, 986 (9th Cir. 2009).

Second, "FOIA's 'strong presumption in favor of disclosure' means that an agency that invokes one of the statutory exemptions to justify the withholding of any requested documents or portions of documents bears the burden of demonstrating that the exemption properly applies to the documents." *Lahr*, 569 F.3d at 973 (citation omitted).[7]

IV    ARGUMENT

Defendants are not entitled to summary judgment because they have not met their burden of establishing that: (1) they have performed an adequate search in response to the Request; or (2) that the information withheld is properly exempt from disclosure.

Before turning to each request, it is important to note how the Request Letter defines the term "document":

> The terms "document" … refer[s] to all forms of communication preserved in
> some physical form, including … spreadsheets, data compilations, directives, ...
> reports, … emails, … notes, … instructions, memoranda, reviews, … whether
> maintained in paper, digital, video, audio tape, or any other form ... whether
> generated by CIS Headquarters, regional processing centers where N-400
> naturalization applications are adjudicated, and in any other USCIS location ...
> with information related to the processing and adjudication of N-400
> applications.

[ECF #57-2 Attachment A at 2.]

---

[7] "Courts must apply [the government's] burden with an awareness that the plaintiff, who does not have access to the withheld materials, is at a distinct disadvantage in attempting to controvert the agency's claims." *Maricopa Audubon Soc'y v. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997) (quotation marks and citation omitted). For this reason, "the underlying facts and possible inferences are construed in favor of the FOIA requester." *L.A. Times*, 442 F. Supp. 2d at 894 (citations omitted).

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment                          5                  Center for Human Rights & Constitutional Law
                                                                        256 S. Occidental Blvd.
                                                                        Los Angeles, CA 90057
                                                                        213/388-8693

**Request 1**

All documents that report to USCIS Headquarters and those generated by USCIS Headquarters on numbers of approvals and denials of N-400 naturalization applications including but not limited to data compilations that in any way provide the reasons for denials of N-400 naturalization applications.

1.      Inadequate places searched

Following several meet and confers with Defendants, Plaintiffs agreed to limit this request to documents in (1) USCIS's Headquarters (including the Executive Secretariat, the Field Operations Directorate (FOD), and the  Office of Performance and Quality Management (OPQ)), (2) the  National Benefits Center (NBC), and (3) the four USCIS Regional Offices. Hereinafter the Headquarters, NBC and four Regional Offices are referred to as the "Responsive Components." Joint Status Report (September 10, 2019) at 3-4. [ECF #25].

For Request 1, Defendant's Litigation Review states the following locations were searched: DIR/EXSO(seemingly the Director of the Office of the Executive Secretariat), and FOD Front Office (Associate Director, Deputy Associate Director, Chief of Staff, and FOD Assistant Associate Director's Office) ("FOD Front Office"). [ECF 57-4 at 1.]

Regarding the FOD, Plaintiffs never agreed that Defendants may exclude the files of, for example, the Director, Deputy Director, Chief of the Office of Performance and Quality, Associate Director for Fraud Detection, Chief of the Office of Policy and Strategy, Chief of the Office of Investigations, etc. *See* USCIS Leadership https://www.uscis.gov/about-us/organization/leadership (last checked March 24, 2021).

Plaintiffs did agree that Defendants could limit the search to the Responsive Components identified above, and those included the  Office of Performance and Quality Management (OPQ)), the  National Benefits Center, and the four USCIS Regional Offices, none of which it appears where searched for the records identified in Request 1, though they all would logically possess the requested records, including

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment

6

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

not only spreadsheets of cases approved and denied, but also records such as directives, reports, emails, instructions, memoranda, and reviews.

2.   Inadequate scope of what was searched for

Plaintiffs also agreed to limit the scope of documents sought in Request 1. Plaintiffs agreed to limit this request to documents "created between January 1, 2016, to October 2, 2018," the date USCIS commenced its records search following receipt of Plaintiff's FOIA request. [ECF #25 at 4.] Plaintiffs have also agreed with regards *all* requests, unless otherwise noted, that USCIS will not be required to search individual applicants' A-file records or produce records that pertain to any specific individual N-400 application. *Id.*

Defendants seemingly limited the search to "document[s] … sent to/from USCIS Headquarters *showing the number of approvals/denials* of N-400 naturalization applications … [and] [a]ny data compilations that … *provide the reasons for denials* of N-400 naturalization applications." (Emphasis added). [ECF #57-4 at 1.]

The request included all documents generated by USCIS Headquarters "on" (i.e. dealing with) numbers of approvals and denials of N-400 naturalization applications, "including *but not limited to data compilations*" (emphasis added) that provide reasons for denials of N-400 naturalization applications. In short, requested records, including for example, instructions, memoranda,  or emails "on" the numbers of approvals and denials of N-400 naturalization applications, is not the same as limiting the search to records that "show[ ] the number of approvals/denials of N-400 naturalization applications," which run into the thousands.

Defendants should be ordered to search in the Responsive Components for and produce all documents that report to USCIS Headquarters and those generated by USCIS Headquarters on numbers of approvals and denials of N-400 naturalization applications.

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment

7

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

**Request 2**

All documents compiling data submitted by one or more of the agency's locations processing or adjudicating N-400 naturalization applications or produced by USCIS Headquarters related to the volume of or reasons for RFEs ("Requests For Evidence") and NOID ("Notices of Intent to Deny") notifications issued in N-400 cases.

Defendant produced a spreadsheet called OPQ-N400-Statistics (responding to requests 2, 3, and 9). For the period for January 2016 to October 2, 2018, the spreadsheet shows median processing times, and totals of receipts, approvals, and denials of N-400s, RFEs and NOIDs issued, reasons for denials, and net backlogs.[8] However, it does not include as requested, *reasons* for RFEs and NOIDs, or delays caused by RFEs and NOIDs.

      1.     Inadequate places searched

Plaintiffs agreed that Request 2 may be limited to the Responsive Components. For Request 2, Defendant's Litigation Review states the following locations were searched: DIR/EXSO and FOD Front. [ECF 57-4 at 1.]

Regarding the FOD, Plaintiffs never agreed that Defendants may exclude the files of the various other offices identified *supra* (*e.g.*, Director, Deputy Director, Chief of the Office of Performance and Quality, etc.)

Plaintiffs did agree that Defendants could limit the search to the Responsive Components, and those included the Office of Performance and Quality Management (OPQ), the National Benefits Center, and the four USCIS Regional Offices, *none* of which it appears where searched for the records identified in Request 2, though they all may logically possess the requested records.

      2.     Inadequate scope of what was searched for

Plaintiffs also agreed to limit the scope of documents sought in Request 2. Plaintiffs agreed to limit this request to summary agency reports on (1) numbers of N-

---

[8] Separate tabs (Report C4 Den Reason and Report ELIS Den Reason) list entirely different numbers of denials for the same periods and the same reasons.

400 applications received, (2) numbers of N-400 RFE's issued, (3) numbers of N-400 NOIDS issued, and (4) reports re: primary reasons RFE's are issued on N-400 applications. [ECF #25 at 4.]

Defendant produced a spreadsheet called OPQ-N400-Statistics (responding to requests 2, 3, and 9). The spreadsheet shows median processing times, and totals of receipts, approvals, and denials of N-400s, RFEs and NOIDs issued, and net backlogs.[9] However, it does not include what this request sought: documents addressing the reasons for RFEs and NOIDs, and delays caused by RFEs and NOIDs.

Defendants should be ordered to search in the Responsive Components for and produce all documents addressing the reasons for RFEs and NOIDs, and delays caused by RFEs and NOIDs.

**Request 3**

All documents compiling data submitted by one or more of the agency's locations processing or adjudicating N-400 naturalization applications or produced by USCIS Headquarters related to the delay in processing N-400 applications.

Defendant produced a spreadsheet called OPQ-N400-Statistics (responding to requests 2, 3, and 9). For the period for January 2016 to October 2, 2018, the spreadsheet shows median processing times, and totals of receipts, approvals, and denials of N-400s, RFEs and NOIDs issued.

In light of Defendant's belatedly produced documents after this case was filed, and its *Vaughn* Index, Plaintiffs are now satisfied with Defendant's response to this request rendering Defendant's Motion for Summary Judgment as to this request moot.

**Request 4**

All documents relating to funds allocated by Congress for the processing and/or adjudication of N-400 applications.

USCIS asserts that there are no responsive records because "with limited

---

[9] Separate tabs (Report C4 Den Reason and Report ELIS Den Reason) list entirely different numbers of denials for the same periods and the same reasons.

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment                 9                 Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

exceptions," USCIS "receives no appropriated funding from Congress … thus there are no records responsive to Item 4 of the request." Joint Status Report (February 28, 2020) at 7. [ECF #37.]

1.     Inadequate places searched

It appears Defendants only searched for documents requested in Request 4 in the office of the "OCFO." Litigation Search Requirements at 2. [ECF #57-4.]

Plaintiffs never agreed that the search for documents relating to Request 4 be limited to the Office of the Chief Financial Officer (OCFO). Given that the term "documents" includes, *inter alia*, reports, emails, notes, memoranda, etc., there may well be documents relating to funds allocated by Congress for the processing and/or adjudication of N-400 applications in other USCIS offices such as the Director's and Deputy Director's offices, Office of the Executive Secretariat, and the Office of Legislative Affairs.

2.     Inadequate scope of what was searched for

The USCIS website states that the "USCIS budget for FY 2020 provides funding to support our critical mission. The budget allocates $4.8 billion in funding, of which $4.7 billion would be financed through mandatory fee revenue, and $122 million would be funded with discretionary appropriations."[10] Thus it would appear that the agency likely possesses documents relating to discretionary appropriations allocated to the adjudication of N-400 applications.[11] Most of the funding to

---

[10]https://www.uscis.gov/tools/hearing-a-review-fy-2020-budget-request-us-customs-and-border-protection-us-immigration-and-customs-enforcement-and-us-citizenship-and-immigration-services-may-9-2019-acting-deputy-director-tracy-renaud (last checked February 28, 2020).

[11]Even a cursory review of the internet shows, for example, that in 2019 USCIS issue a "Notice of Funding Opportunity" to allocate "a total of approximately $9,000,000 in federal funding" for support on "how to apply for naturalization" within the authorized practice of immigration law with the funds authorized by the "Consolidated Appropriations Act, 2019 (Pub. L. 116-6), Division A, Title IV." *See* https://www.uscis.gov/sites/default/files/document/legal-docs/FY19NOFO_CINAS.pdf

Plaintiffs' Opposition Motion to Defendant's Motion for Summary Judgment

10

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

adjudicate N-400s comes from user fees held in the Immigration Examinations Fee Account, but it appears the budget is supplemented by Congress' annual appropriations process. DHS, USCIS, "Budget, Planning & Performance," Mar. 22, 2019, https://www.uscis.gov/about-us/budgetplanning-performance (last accessed July 21, 2019).

In fiscal year 2018, the U.S. Citizenship and Immigration Service's requested a budget with $4,310,526,000 from user fees and an appropriation of $131,513,000 from the Department of Homeland Security. DHS, USCIS, United States Citizenship and Immigration Services Budget Overview: Fiscal Year 2018 Congressional Justification, FY 2018, p. 11. Since Plaintiffs do not believe DHS operates any fee-for-services programs, we believe these funds allocated to USCIS were Congressional allocations.

Defendants should be ordered to search at its headquarters for and produce all documents relating to funds allocated by Congress that were used by USCIS for the processing and/or adjudication of N-400 applications..

**Request 5**

All documents compiling data that show the fees received with naturalization applications, excluding documents relating to individual cases such as receipts, deposits, etc.

USCIS has belatedly released several spreadsheets recording fee collection. Joint Status Report (February 28, 2020) at 7. [ECF #37.] In light of Defendant's *Vaughn* Index and documents belatedly produced after this case was filed, Plaintiffs are satisfied with Defendant's response to this request rendering Defendant's Motion for Summary Judgment as to this request moot.

**Request 6**

All documents regarding USCIS's allocation of funds to its various facilities and field offices for the processing or adjudication of N-400 applications.

Defendants state "[a]fter a thorough search of USCIS agency records, no responsive records were located for Item No[]. … 6 … Regarding Item No[ ]. … 6, …

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment

11

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

Congress does not appropriate funds to USCIS for processing N-400 applications." Joint Status Report (February 28, 2020) at 22. [ECF #37.]

### 1. Inadequate places searched

It appears Defendants only searched for documents requested in Request 6 in the office of the "OCFO." Litigation Search Requirements at 3. [ECF #57-4.]

Plaintiffs never agreed that the search for documents relating to Request 6 be limited to the Office of the Chief Financial Officer (OCFO). Given that the term "documents" includes, *inter alia*, reports, emails, notes, memoranda, etc., it is extremely likely there are documents regarding USCIS's allocation (the request says USCIS's allocation, not just Headquarter's allocation) of funds for the processing or adjudication of N-400 applications in other USCIS offices such as the Director's and Deputy Director's offices, Office of the Executive Secretariat, the National Benefits Center, and the four USCIS Regional Offices, none of which it appears where searched for the records identified in Request 6.

### 2. Inadequate scope of what was searched for

As noted above, Defendants state "[a]fter a thorough search of USCIS agency records, no responsive records were located for Item No[ ]. … 6 … Regarding Item No[ ]. … 6, … Congress does not appropriate funds to USCIS for processing N-400 applications." Joint Status Report at 22. [ECF #37.] However, Request 6 is not about funds appropriated by Congress. It requests all documents, including reports, emails, notes, memoranda, etc., regarding USCIS's "allocation of funds to its various facilities and field offices" for the processing or adjudication of N-400 applications.

Such documents obviously exist and Defendant should be Ordered to search in the Responsive Components for all documents relating to the allocation of funds for the processing or adjudication of N-400 applications and produce them.

### Request 7

All documents relating in whole or in part to decisions by USCIS officials regarding allocations of funds to the processing centers and field offices for the adjudication of N-400 applications.

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment

12

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

Defendants state "[a]fter a thorough search of USCIS agency records, no responsive records were located for Item No[]. … 7 … Regarding Item No[ ]. … 7, … Congress does not appropriate funds to USCIS for processing N-400 applications." Joint Status Report (February 28, 2020) at 22. [ECF #37.]

### 1. Inadequate places searched

It appears Defendants only searched for documents requested in Request 7 in the office of the "OCFO." Litigation Search Requirements at 3. [ECF #57-4.]

Plaintiffs never agreed that the search for documents relating to Request 6 be limited to the Office of the Chief Financial Officer (OCFO). Given that the term "documents" includes, *inter alia*, reports, emails, notes, memoranda, etc., there may well be documents about decisions by USCIS officials in the regarding allocations of funds to the processing centers and field offices for the adjudication of N-400 applications in other USCIS offices such as the Director's and Deputy Director's offices, Office of the Executive Secretariat, the National Benefits Center, and the four USCIS Regional Offices, none of which it appears where searched for the records identified in Request 7.

### 2. Inadequate scope of what was searched for

As noted above, Defendants state "[a]fter a thorough search of USCIS agency records, no responsive records were located for Item No[ ]. … 7 … Regarding Item No[ ]. … 7, … Congress does not appropriate funds to USCIS for processing N-400 applications." Joint Status Report at 22. [ECF #37.] However, Request 7 is clearly not limited to funds appropriated by Congress. It requests all documents, including reports, emails, notes, memoranda, etc., relating in whole or in part to "decisions" by USCIS officials regarding allocations of funds to the processing centers and field offices for the adjudication of N-400 applications.

Such documents obviously exist and Defendant should be Ordered to search in the Responsive Components for documents relating to decisions by USCIS officials regarding allocations of funds for the adjudication of N-400 applications and produce them.

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment                    13                    Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

**Request 8**

All documents that address or concern delays or backlogs in the processing time for naturalization applications.

1. Inadequate places searched

For Request 8, Defendant's Litigation Review states the following locations were searched: FOD Front Office (Associate Director, Deputy Associate Director, Chief of Staff, any FOD Assistant Associate Director's Office). [ECF 57-4 at 4.]

Regarding the FOD, Plaintiffs never agreed that Defendants may exclude the files of the various other offices identified *supra* ( Director, Deputy Director, Chief of the Office of Performance and Quality, etc.) Plaintiffs also agreed that Defendants could limit the search to the Responsive Components identified above, and in addition to the FOD those included the Office of Performance and Quality Management (OPQ), the National Benefit, and the four USCIS Regional Offices, none of which it appears where searched for the records identified in Request 8, though they all may logically possess the requested records.

In addition, Plaintiffs agreed (and believe Defendant agreed) that Defendants may limit their search of "emails" to the emails of the USCIS Director (or Acting Director), USCIS Deputy Director (or Acting Deputy Director), the FOD Director (or Acting FOD Director) and the FOD Deputy Director (or Acting Deputy Director) that were sent between March 1, 2017, to October 2, 2018, ("E-Mail Records") by these individuals and that discuss delays or backlogs in the processing time for naturalization applications. Joint Status Report at 6. [ECF #25.]  Plaintiffs did not so limit other "documents" such as reports, notes, memoranda, etc., addressing or concerning delays or backlogs in the processing time for naturalization applications written by employees in the Responsive Components.

2. Inadequate scope of the searched

It also appears that the search was inadequate even as to the FOD Front Office. It is extremely unlikely that the only documents in the FOD Front Office addressing or concerning delays or backlogs in the processing time for naturalization applications

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment                    14                    Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

1   are the documents disclosed relating to planned Congressional testimony by the

2   USCIS Director. *Vaughn* Index at 13-16 [ECF # 57-4.]

3       Defendants should be ordered to search in the Responsive Components for all

4   documents that address or concern delays or backlogs in the processing time for

5   naturalization applications.

6       3.      Exemptions claimed

7       Defendants searched for documents that "may include the terms/and or

8   combination of terms N-400; naturalization; delay; backlog; processing time."

9   Litigation Review at 4. [ECF # 57-4.] They produced twelve documents, eleven

10  heavily redacted under 5 U.S.C. § 552b(5) filed herewith as Exhibit 1. *See Vaugn*

11  Index at 13-16. [ECF #57-8.] Defendants state all of the information withheld is

12  predecisional, "as it was prepared in anticipation of critical Congressional testimony

13  and provide insight into agency deliberations and proposals for future agency action to

14  address operational problems, including reducing the N-400 and other application and

    petition backlogs." *Id*. at 15.

15      Exemption 5 of the FOIA protects "inter-agency or intra-agency memorandums

16  or letters which would not be available by law to a party other than an agency in

17  litigation with the agency." *Id*. Exemption 5 incorporates the deliberative process

18  privilege, which protects predecisional and deliberative agency material from

19  disclosure.

20      The government bears the burden of establishing an exemption, and it must do

21  so with non-conclusory affidavits. *See Minier v. Central Intelligence Agency*, 88 F.3d

22  796, 800 (9th Cir. 1996) (government bears "burden of proving the applicability of an

23  exemption"); *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991) (government must

24  submit non-conclusory affidavits that provide "a particularized explanation of how

25  disclosure of the particular document would damage the interest protected by the

26  claimed exemption").

27      Defendant's declaration is vague and ambiguous and fails to adequately explain

28  how disclosure of the withheld material would damage the interest protected by the

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment                          15           Center for Human Rights & Constitutional Law
                                                                          256 S. Occidental Blvd.
                                                                          Los Angeles, CA 90057
                                                                              213/388-8693

claimed exemption.

Plaintiffs urge the Court to require Defendants to provide a more detailed declaration and to review the withheld documents *in camera*.

**Request 9**

To the extent not provided in response to Request Number 8, all data compilations and spreadsheets addressing in whole or in part delays or backlogs in the processing or adjudication of naturalization applications.

Defendant produced a spreadsheet called OPQ-N400-Statistics (responding to requests 2, 3, and 9). For the period for January 2016 to October 2, 2018, the spreadsheet shows median processing times, and totals of receipts, approvals, and denials of N-400s, RFEs and NOIDs issued.

In light of Defendant's *Vaughn* Index and documents belatedly produced after this case was filed, and Plaintiffs' request that the similar Request 8 be responded to, Plaintiffs are satisfied with Defendant's response to this request rendering Defendant's Motion for Summary Judgment as to this request moot.

**Request 10**

To the extent not provided in response to a separate request, all documents reporting on: (a) the volume of naturalization applications received; (b) where the applications were received; (c) where the applications were processed and adjudicated; and (d) how long it took to fully process and adjudicate the naturalization applications.

In light of a spreadsheet Defendant's belatedly produced after this case was filed and the Defendant's *Vaughn* Index, Plaintiffs are satisfied with Defendant's response to this request rendering Defendant's Motion for Summary Judgment as to this request moot.

**Request 11**

All documents relating to inquiries from or responses to members of Congress relating to the delays in processing N-400 applications.

Defendant produced a spreadsheet titled: Copy of FOIA Litigation Processing

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment

16

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

N-400 (2) OILA Response11.XLSX. This document lists members of congress (270 rows) and delays of N-400 application processing times. Data is provided for the years 2016, 2017, and 2018. The sheet lists dates applications are received and dates of inquiry status. The second spreadsheet provided appears to duplicate the data in the previous spreadsheet.

1.      Inadequate scope of what was searched for

Plaintiffs agreed Defendant may limit the search to the USCIS Office of Legislative Affairs for records received from members of Congress between March 1, 2017, and Oct. 2, 2018. [ECF #25 at 7.]

Plaintiffs pointed out to Defendants long ago that neither document produced for this request includes the "inquiries from or responses to members of Congress relating to the delays in processing N-400 applications," or "documents relating to [such] inquiries..." [ECF #37 at 12]

Since Defendants produced a spreadsheet listing Congressional inquiries, the inquiries obviously existed and were almost certainly responded to.

Defendants should be ordered to search the Office of Legislative Affairs for and produce the requested documents regarding inquiries from and responses to members of Congress relating to the delays in processing N-400 applications.

**Request 12**

All documents including but not limited to memoranda, guidance, instructions, or directives issued to facilities, centers, or field offices discussing policy or procedures to be followed in the processing or adjudication of N-400 applications.

Defendant produced (1) a PDF document entitled CHAP N-400 SOP 170 -12 which includes several parts of the policy manual dealing with naturalization, (2) a PDF document entitled COW2018001096 ELIS SOP 12, a presentation printout about the usability of the USCIS Electronic Immigration System (USCIS ELIS), (3) a presentation printout titled "USCIS N-400 Processing in ELIS", and (4) a duplicate of the document titled "USCIS N-400 Processing in ELIS.

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment                    17

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

1.  Inadequate places searched

Defendants state the locations searched were the FOD and OP&S (Office of Policy and Strategy). Litigation Requirements at 6.[ECF #57-4.] However in Defendant's *Vauhgn* Index Spreadsheet, [ECF #57-6 at 3] there is a note from Defendant saying "I do not have-questioned to FOD." While this statement is not clear, it seems to indicate that the FOD was not searched.

In any event, Plaintiffs agreed that the search for documents responsive to Request 12 may be limited to searches within the Responsive Components. Joint Status Report at 13 fn. 15. [ECF # 37.] As previously pointed out the Responsive Components are (1) USCIS's Headquarters (including the Executive Secretariat, the Field Operations Directorate (FOD), and the Office of Performance and Quality Management (OPQ)), (2) the National Benefits Center (NBC), and (3) the four USCIS Regional Offices. Joint Status Report at 3-4 (September 10, 2019) [ECF #25].

The Court should Order Defendants to conduct a search at the Responsive Components offices.

2.  Inadequate scope of what was searched for

It is extremely unlikely and highly improbable that the three previously mentioned documents represent the full extent of communication between USCIS leadership and adjudication facilities concerning policies and procedures to be followed in the processing and adjudication of N-400 applications.

It is almost certain that memoranda, emails, guidance, instructions, or directives issued to field offices address policies or procedures to be followed in the processing of N-400 applications.

Plaintiffs' further reason that any documents pertaining to denaturalization would be responsive to Request 12 and no such responsive documents were produced within this category. Plaintiffs find it implausible that there are no emails, internal memos, and documents that address denaturalization and how it might impact naturalization itself.

Defendants should be ordered to search the Responsive Components offices for

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment                              18                Center for Human Rights & Constitutional Law
                                                                             256 S. Occidental Blvd.
                                                                             Los Angeles, CA 90057
                                                                             213/388-8693

documents regarding policies or procedures to be followed in the processing or adjudication of N-400 applications.[12] Plaintiffs have agreed Defendants need only search for documents created between January 1, 2016 and October 2, 2018. [ECF #37 at 13, fn. 15.]

**Request 13**

> All documents and data compilations sent to or prepared by the Administrative Appeals Office addressing the number of pending and decided appeals of denials of N-400 applications and the outcome of those appeals. This request does not seek copies of the individual appeals or decisions.

Defendants state that no documents exist [ECF # 37 at 14]. Plaintiffs accept this assertion rendering Defendant's Motion for Summary Judgment as to this request moot.

**Request 14**

> All documents sent to or prepared by USCIS regarding delays in naturalization applications due to problems implementing or using the Electronic Immigration System ("ELIS")

Defendants provided a document entitled COW20180019678-14 consisting of a 2-sentence September 22, 2017, email from Daniel M. Renaud, Associate Director of Field Operations Directorate, on the subject of "Managing FOD's Operational Use of ELIS" with one of the two sentences redacted citing 5 U.S.C. § 552(b)(5) , and an USCIS "Information Memorandum "with subject line Managing FOD's Operational Use of ELIS from James McCamant, acting Director of USCIS, to Daniel Renaud, with almost the entire document redacted citing exemption 5 U.S.C § 552(b)(5) . [ECF #37 at 14]

In light of the documents Defendant's belatedly produced after this case was filed, and to minimize the remaining disputes, Plaintiffs will not seek further disclosures in response to this request rendering Defendant's Motion for Summary

---

[12] Plaintiffs do not challenge the redactions made to a Power Point presentation released as document COW2018001096 ELIS SOP 12.

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment

19

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

1    Judgment as to this request moot.

2        **Request 15**

3        All documents and data relied upon in The Department of Homeland Security

4        Ombudsman 2017 Annual Report to Congress regarding the USCIS at  https://

5        www.dhs.gov/sites/defaUt/files/publications/OHS%20Annual%20Rep011%202

6        0170.pdf.

7        Defendant states that Request 15 was referred to the Department of Homeland

8    Security's Ombudsman's Office for a response as those items of the request sought

9    records created by [that] component[ ] of the Department of Homeland Security, not

10   USCIS. [ECF #57-6 Attachment E, p. 3.]

11       1.      Inadequate search

12       The FOIA does not exempt an agency from releasing records in its possession

13   simply because the document may have originated in a separate department within an

14   agency or a different federal agency. There is no doubt that USCIS possesses

15   documents, likely including correspondence, relating to the DHS's Ombudsman 2017

16   Annual Report regarding the USCIS. Indeed, in preparing the Ombudsman's report, it

17   is highly improbable that USCIS did not provide documents or reports to the

18   Ombudsman. Defendant must comply with this request not just ignore and refer it to

19   the office of the Ombudsman. [ECF #37 at 16.]

20       According to the Defendant's *Vaughn* Index Spreadsheet, USCIS's only

21   attempt to produce responsive records for Request 15 was to refer the search to DHS

22   on July 21, 2019 and then to make "follow up" inquiries via emails on November 12

23   and 22, 2019. [ECF #57-6 at 3.]

24       Defendants should be ordered to search for all documents and data it provided

25   or received that were relied upon in The Department of Homeland Security

26   Ombudsman 2017 Annual Report to Congress regarding the USCIS. Plaintiffs have

27   agreed that Request 15 may be limited to searches (1) within the Executive

28   Secretariat, the FOD, and the OPQ, created between Jan. 1, 2016 and Oct. 2, 2018,

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment                20        Center for Human Rights & Constitutional Law
                                                       256 S. Occidental Blvd.
                                                       Los Angeles, CA 90057
                                                       213/388-8693

and (2) Email Records as defined above. Joint Status Report at 15, fn. 17 (Feb. 28, 2020. [ECF #37.]

**Request 16**

All documents and data relied upon in The Department of Homeland Security Office of Inspector General Report (OIG) "USCIS Has Been Unsuccessful in Automating Naturalization Benefits Delivery," dated November 30, 2017 (at https://www.oig:dhs.gov/reports/2018/uscis-has-been-unsuccessful-automating-naturalization-benefits-delivery/oig-18-23).

1.      Inadequate search

Similar to Request 15, the Defendant referred Request 16 to DHS seemingly without conducting a search of their own offices within USCIS.

Like Request 15, Request 16 has gone unanswered since according to the Defendant's *Vaughn* Index Spreadsheet it appears DHS did not respond to USCIS's request for a search. [ECF #57-6 at 4.]

For the same reasons discussed regarding Request 15, Defendant should be ordered to search for all documents and data it provided or received that were relied upon in The Department of Homeland Security Ombudsman 2017 Annual Report to Congress regarding the USCIS. Plaintiffs have agreed that Request 16 may be limited to searches (1) within the Executive Secretariat, the FOD, and the OPQ, created between Jan. 1, 2016 and Oct. 2, 2018, and (2) Email Records. Joint Status Report at 16, fn. 18 (Feb. 28, 2020. [ECF #37.]

**Request 17**

All complaints filed by naturalization applicants or those acting on behalf of naturalization applicants regarding inappropriate, abusive, or discriminatory treatment of naturalization applicants by USCIS employees.

Defendant claims there are "no responsive records" to Request 17.

1.      Inadequate places searched

Defendant state the only location searched was the FOD. Litigation Search Requirements at 8 [ECF #57-4.]

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment

21

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

Plaintiffs have agreed that Request 17 may be limited to searches (1) within the Executive Secretariat, and the Field Operations Directorate (FOD), created between Jan. 1, 2016 and Oct. 2, 2018, *and* (2) Email Records as defined above. Joint Status Report at 17, fn. 19 (Feb. 28, 2020. [ECF #37.] The Plaintiffs also agreed that USCIS is not required to search A-files for responsive records. *Id*.

It does not appear the search included the Executive Secretariat.

2.      Inadequate search

As Plaintiffs have previously pointed out to Defendant, it appears highly unlikely that from 2016 to 2018 USCIS received <u>no</u> complaints by naturalization applicants or those acting on their behalf regarding inappropriate, abusive, or discriminatory treatment by USCIS agents. [ECF #37 at 17.] The USCIS website offers a range of ways in which complaints can be made by immigrants or their representatives.[13]

Defendant should be ordered to search within the Executive Secretariat, and the Field Operations Directorate (FOD), for complaints filed by naturalization applicants or those acting on behalf of naturalization applicants regarding inappropriate, abusive, or discriminatory treatment of naturalization applicants by USCIS employees created between Jan. 1, 2016 and Oct. 2, 2018.

**Request 18**

All documents related to a review, update, or revision of the USCIS Fee Review Study described here:

https://www.federalregister.gov/documents/2016/05/04/2016-10297/us-citizenship-and-immigration-services-fee-schedule.

Defendant produced a document entitled COW2018001096 76 OCFO –18 with five reports, one Federal Register rule announcement, and one Federal Register

---

[13] *See* https://www.uscis.gov/policy-manual/volume-1-part-a-chapter-9Immigrants or their counsel may "Submit Written Complaint[s] … include[ing] handwritten letters, emails, or faxes." *Id*. They may also "Contact [the] Office of Inspector General Directly," and they may "File [a] Complaint with USCIS Headquarters …" *Id*.

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment                    22                    Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

proposed rule. One of the reports entitled Small Entity Analysis of the USCIS Fee Schedule is a 44-page report that says the agency has "undertaken this review of those fees that would potentially affect small [business] entities," and "the goal of this research was to analyze the economic impact on small entities of a proposed fee change by USCIS." It is highly improbable that USCIS researchers and administrators produced no documents in the course of preparing this lengthy report. Another document produced is entitled FY 2016/2017 Immigration Examinations Fee Account –Fee Review Supporting Documentation with Addendum.

Defendant also produced two 6-page Public Affairs Guidances dealing with the 2016 proposed fee rule with all but the cover pages redacted under (b)(5) and 5 U.S.C. § 552(b)(6) . [ECF #37 at 17]

1.    Inadequate places searched

Plaintiffs have agreed that Request 18 may be limited to searches (1) within the Executive Secretariat, the FOD, and the OPQ, created between Jan. 1, 2016 and Oct. 2, 2018, and (2) Email Records as defined above. [ECF #25 at 11.]

Defendant note in their Litigation Requirements filing that it searched the offices of OP&S and OCFO.  [ECF # 57-4 at 8.] Neither of these offices were the agreed upon offices, and the agreed upon offices were not searched at all. Defendant should be ordered to search the offices the Parties agreed upon in the Supplemental Joint Rule Report. [ECF #25 at 11]

2.    Inadequate search

Defendant produced a document entitled COW2018001096 76 OCFO –18 with five reports, one Federal Register rule announcement, and one Federal Register proposed rule. It is highly improbable that USCIS researchers and administrators produced no documents in the course of preparing this lengthy report. Given the detailed reports prepared by USCIS about the fee increases, it seems highly unlikely, indeed impossible, that this or any of the reports produced could have been prepared without USCIS officers preparing other documents in the course of researching and preparing the final reports.

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment                                    23                    Center for Human Rights & Constitutional Law
                                                                                              256 S. Occidental Blvd.
                                                                                              Los Angeles, CA 90057
                                                                                              213/388-8693

It is also highly unlikely no email communications were exchanged on the topic. [ECF #37 at 17.]

2.     Inappropriate use of exemption

For the same reasons discussed regarding exemptions claimed to withhold documents located in response to Request 8, Defendant's declaration is vague and ambiguous and fails to adequately explain how disclosure of the withheld material would damage the interest protected by the claimed exemption.

Plaintiffs urge the Court to require Defendants to provide a more detailed declaration and to review the withheld documents *in camera*.

**Request 19**

All documents relied upon, issued in response to, or to implement the change in the mission of USCIS announced on February 22, 2018 described here: https://www.uscis.gov/news/news-releases/uscis-director-l-francis-cissna-new-agency-mission-statement

Defendant states that USCIS "did not locate any records responsive to Item No. 19 of the request..." Plaintiffs believe it is highly unlikely, indeed virtually impossible, that Defendant possesses no documents relied upon, issued in response to, or to implement the mission of USCIS announced on February 22, 2018. [ECF #37 at 19.] Nevertheless, to minimize the remaining disputes, Plaintiffs will not seek further disclosures in response to this request rendering Defendant's Motion for Summary Judgment as to this request moot.

**Request 20**

All documents received by USCIS from the White House or forwarded by USCIS to the White House regarding in whole or in part the processing or adjudication of naturalization applications.

Defendant produced one 2-page document labeled COW2018001096 REDACTED-2 with three short emails all dated in September 2016 with the text redacted other than the names of the authors, the recipients, and the dates.

Plaintiffs' Opposition Motion to Defendant's Motion for Summary Judgment

24

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

1.    Inadequate places searched

Plaintiffs have agreed that Request 20 may be limited to searches (1) within the Executive Secretariat, the FOD, and the Office of Legislative Affairs, created between Jan. 1, 2016 and Oct. 2, 2018, and (2) Email Records as defined above.

Defendant noted on their Litigation Requirements filing that they searched the office of DIR/EXSO. [ECF # 57-4 at 9]  This search excludes the FOD, the Office of Legislative Affairs, and Email Records, locations agreed upon in the Supplemental Joint Rule Report. [ECF #25 at 12]

2.    Inadequate search

Plaintiffs believe it is highly unlikely that Defendant possesses no documents received by USCIS from the White House or forwarded by USCIS to the White House regarding in whole or in part the processing or adjudication of naturalization applications. [ECF #37 at 20.][14]

3.    Inappropriate use of exemption

The fact a document was received from or forwarded to the White House does not mean it is automatically exempt from disclosure. *See* discussion supra re Request 8. These documents, including Email Records as defined above, within the Executive Secretariat, the FOD, and the Office of Legislative Affairs, should be searched for and produced. [ECF #37 at 20.]

V.    CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,
PETER A. SCHEY
CENTER FOR HUMAN RIGHTS AND
CONSTITUTIONAL LAW
*/s/ Peter Schey*

---

[14] As late as June 2018, then-USCIS Director Francis Cissna was part of a working group of top officials within the White House and federal agencies that were "planning additional crackdowns on immigration before the November midterms."  https://www.politico.com/story/2018/06/18/trump-aides-plan-fresh-immigration-crackdowns-before-midterms-652246.

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment                    25                    Center for Human Rights & Constitutional Law
                                                                       256 S. Occidental Blvd.
                                                                       Los Angeles, CA 90057
                                                                       213/388-8693

CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2021, I served the foregoing pleading on all

counsel of record by means of the District Clerk's CM/ECF electronic filing system.

Dated:  March 26, 2021                    PETER A. SCHEY
                                          CENTER FOR HUMAN RIGHTS AND
                                          CONSTITUTIONAL LAW

                                          */s/ Peter Schey*
                                          _____

                                          Attorneys for Plaintiffs

Plaintiffs' Opposition Motion to Defendant's
Motion for Summary Judgment                        26

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693